## STATE OF IOWA V. E. J. CHINGREN, Appellant.

**False Pretenses:** SCIENTER: *Evidence.* In a prosecution for cheating by pointing out to prosecutor a wrong tract of land in a transaction where land was traded for goods, evidence that defendant had pointed out the same land to another, and said that about twenty acres of it was in the slough, is admissible on the question of knowledge, where defendant testified that he did not know the corners and lines of the land which he was trading.

*Matters of common knowledge.* Evidence that it is the custom to mark up the price of land when it is being traded for goods is properly excluded on a trial for cheating by false pretenses, as it is a matter of common knowledge that in the making of exchanges of property the prices are not fixed at cash values.

*Admissions.* Evidence that defendant charged with obtaining a stock of merchandise by false pretenses had stated to a specified witness, soon after the trade, that he had invoiced part of the goods and that they amounted to nine hundred dollars is admissible to rebut evidence by defendant that the goods were of little value.

*Same.* Evidence of statements made by defendant showing the value of goods which he is charged to have obtained by false pretenses is admissible without laying a foundation, as he is a party to the action.

CROSS-EXAMINATION. Defendant charged with cheating by false pretenses in pointing out as his wife's land which he proposed to exchange for a stock of goods, other land of better quality, may be cross-examined as to whether any money was paid by either him or his wife for the land given in exchange for the goods and as to whether a mortgage given by them on the land was a sham, where he testifies on his examination in chief that his wife owned the land and that there was a mortgage on it, and that the mortgagee went with him to examine certain property with a view of changing the security from the land.

SAME. On cross-examination in criminal cases, inquiry may be made concerning defendant's different occupations and places of resi-

dence, the extent t $\rangle$ which such inquiry may be carried, resting in the sound discretion of the court.

*Rule applied.* A question asked of defendant on cross-examination in a criminal trial as to the business he conducted at a given fair is not improper, although the answer shows that he was engaged in a gambling occupation.

*Harmless error.* Defendant in a criminal trial is n*o*t prejudiced by the question put to him on cross-examination whether a certain business institution which he had testified he had conducted was a gambling institution, where such question was immediately withdrawn.

**Impeachment:** *Court and jury.* An instruction as to what weight impeaching evidence shall have as affecting defendant's credibility, and what weight shall be given his testimony, and under what circumstances his testimony may not be rejected entirely, is proper, as such evidence may affect defendant's credibility, and not warrant a rejection of his testimony entirely; and under such circumstances the extent to which his credibility is impeached is for the jury.

*Same.* Defendant is not prejudiced by an instruction which requires the state to prove more than the law requires.

**Indictment:** *Variance.* It is not a fatal variance in a prosecution for cheating by pointing out a wrong tract of land, where it is alleged that defendant pointed out the land in question as belonging to him, that the proof was that he said it belonged to his wife; since there might be a conviction on the further allegation that defendant pointed out a tract owned by neither him nor his wife.

*Same.* Where an indictment for cheating charged that prosecutor did "bargain and trade and set over and deliver" unto defendant a stock of goods, which was received by him and taken into his possession, and the evidence was that the bargain was made with the defendant, and delivery made to him, there was no variance though the bill of sale was delivered to defendant's wife, it having been done at his request since the fact that the defendant was acting for his wife was not sufficient to relieve him from responsibility for his unlawful act.

*Appeal from Webster District Court.*—Hon. P. B. Birdsall, Judge.

Friday, April 8, 1898.

The defendant was convicted of the crime of cheating by false pretenses, and from judgment sentencing

him to imprisonment in the penitentiary for three years he appeals.—*Affirmed.*

*Wright & Nugent* for appellant.

*Milton Remley*, attorney general, and *Jesse A. Miller* for the state.

LADD, J.—On or about August 28, 1895, T. J. Conners was the owner of a stock of merchandise kept in a building of his father at Barnum, Webster county, and the wife of the defendant was the owner of the west one-half of the northwest one-quarter of section 8, in township 90 N., of range 34 W of fifth P. M., in Pocohontas county, subject to a mortgage of one thousand dollars. The defendant, acting for his wife, exchanged this land, at a valuation of two thousand dollars, to Conners for the merchandise at the valuation of one thousand, two hundred dollars, and the building and lot were kept at one thousand dollars. A release of the one thousand dollar mortgage was procured by executing mortgages for the same amount on the merchandise and store building, and defendant and wife executed to Conners a note and mortgage for the difference of two hundred dollars. It is charged in the indictment that to induce Conners to make this trade, and part with his stock of goods, the defendant knowingly and with the intention of defrauding pointed out to him the east one half of the northwest one-quarter of the northwest one quarter, and the west one-half of the northeast one quarter of the northwest one-quarter, of section 8, an forty acres just north of the same, being high, rollin: prairie, worth about two thousand dollars, and represented it to be the west one-half of the northwest one quarter of said section, which was variously estimated to be worth from three hundred dollars to one thousand, two hundred dollars. The land exchanged was swampy,

and covered with cane brake, and contained not to exceed fifteen or sixteen acres arable in character.

I. The defendant sought to prove that when real estate is being traded for goods it is the custom to mark up the price of land. The evidence was properly excluded. It is a matter of common knowledge that in making exchanges of any property the prices are not fixed at cash values. The law permits those selling or exchanging to brag on their property, and to obtain the highest price possible to secure fairly and honestly. This is generally known, and there was no occasion to prove that men sometimes ask more for a thing than it is worth.

II. P. A. Anderson was permitted to testify that he was out to look at the land with defendant, and that the latter pointed out to him a certain southeast corner of land and told him about twenty acres of it was slough. The evidence of this witness is rather vague, but tended to show that the same land was pointed out, alleged in the indictment to have been shown Conners as the west one-half of the northwest one-fourth of section 8. The defendant, in his testimony, claimed that he did not know the corners and lines of his wife's eighty, and this evidence was admissible on the question of knowledge. It tended to show that he knew the corners and lines, and was claiming the land shown Conners as his own. For what purpose Anderson looked at the land does not appear, and for this reason the authorities cited by both parties concerning proof of similar offenses are not applicable.

III. This is a part of defendant's cross-examination: "Q. What was your business in connection with country fairs at different places? A. I never was outside from home. Q. Well, at the Fonda Fair. What business did you have with the fair there? A. I ran a

bowery at one time.  Q.  Did you run anything else?  A. I ran a jewelry spindle at one time." He was then asked whether that was a gambling institution, but this was withdrawn upon objection, and the question, "What is the spindle you speak of?" not permitted to be answered. It has often been held that on cross-examination inquiry may be made concerning a defendant's different occupations and places of residence. *State v. Pugsley*, 75 Iowa, 743; *State v. Row*, 81 Iowa, 138; *State v. Watson*, 102 Iowa, 651.  The extent to which such inquiry may be carried must necessarily rest in the sound discretion of the trial court. The question eliciting the answer concerning the jewelry spindle was not improper.  If handling it constituted the crime of gambling, the answer might have been stricken on motion.  What it really was does not appear, as evidence of its character was excluded on objection by the defendant.  The question as to its being a gambling institution was promptly withdrawn. There was no erroneous ruling, and we do not think the defendant was prejudiced by the question, improper as it was, in view of its immediate withdrawal by the county attorney.

IV.  The defendant was also asked: "Q.  There was no money passed from you or your wife to Mr. Hughes for that eighty acres?  A.  No money passed from me.  Q.  Or from your wife?  A.  Not that I know of.  *  *  *  Q.  That mortgage was a sham mortgage, was it not?  A.  No, sir." It is insisted this was not cross-examination.  The defendant had testified that his wife owned the land, and became such owner in July or August, 1895; that he had no interest in it; that Hughes held a mortgage of one thousand dollars on it, and that the latter went with him to Barnum to examine the building and stock with a view of changing the security from the land.  How his

wife became owner was legitimate cross-examination, and this might be directed to circumstances of the purchase price paid. The examination developed the fact of giving the mortgage in payment, and the character of the instrument was directly involved in the inquiry concerning ownership.

V.   The evidence of the defendant tended to show the merchandise received from Conners was of little value.   When on the stand he was asked whether he had not stated to Kasky, in Barnum, a short time after the trade, that he had invoiced the goods on the east side of the store, and they amounted to nine hundred dollars; and he answered he did not remember such a statement. Kasky was permitted to testify that defendant so told him. This was admissible in rebuttal. While he did not say to Kasky the inventory was correct, his statement, if made, was subject to that inference. Proof of his statements was admissible without laying the foundation, as he was a party to the action.

VI.   Exception is taken to the eighteenth instruction, in that it assumes the defendant to have been impeached.   Therein the jury are advised they are to determine (1) what weight the impeaching evidence shall have as affecting his credibility as a witness, (2) what weight shall be given his testimony, and they are also told under what circumstances his evidence may not be rejected entirely. Such evidence may affect the credibility of the witness, and yet not warrant the rejection of his testimony entirely. Under such circumstances the jury is to determine the extent to which his credibility is impaired.   The instruction correctly stated the law.

VII.   The indictment alleges that defendant falsely represented he owned the west one-half of the northwest one-fourth of section 8, and pointed out other

land as such land, and as belonging to him. On the trial it appeared that the land described was owned by his wife, and it is said there is a fatal variance between the allegations of the indictment and the proof. The allegation, however, that he had pointed out an entirely different piece of land, and falsely represented it to. be this eighty, remained. If the state established this, it was sufficient. An indictment may allege several false pretenses, and, when this is done, proof of some one of them is sufficient to warrant conviction. *State v. Dunlap*, 24 Me. 77; *State v. Mills*, 17 Me. 211; *Webster v. People*, 92 N. Y. 422; *Com. v. Parmeter*, 121 Mass. 354; *Com. v. Meserve*, 154 Mass. 64 (27 N. E. Rep. 997); *Beasley v. State*, 59 Ala. 20; *State v. Vorback*, 66 Mo. 168; 2 Bishop, Criminal Procedure, sections 165, 171. The court, in the fourteenth instruction, informed the jury that, as Mrs. Chingren was owner of the land, representations regarding ownership must be regarded as immaterial. True, the fifth instruction required such proof in order to convict. But the charge must be read as a whole, and, when so read, could not have been misunderstood by the jury. In any event, defendant was not prejudiced by the state being held to prove more than the law required. It is said the goods are alleged to have been sold to defendant, and proven to have been sold to his wife. The indictment charges that Conners did "bargain, trade, set over, and deliver unto the said E. J. Chingren a certain stock of goods, wares, and merchandise, * * * which said stock of goods, wares, and merchandise above described were received by said E. J. Chingren and taken into his possession." The evidence tended to establish this allegation. Though the bill of sale was executed to the wife, this was done at his instance. The bargain was with the defendant, and the delivery made to. him. That

he may have been acting for her, or in her behalf, will not relieve him from responsibility for what he did.

VIII. Counsel for defendant urge that the verdict is against the evidence. We shall not review this in detail. On all the material points it is conflicting. The evidence offered by the state, if relied upon, as it appears to have been, furnished ample support for the conclusion of the jury, and its verdict cannot be disturbed. —AFFIRMED.