PEASLEE-GAULBERT COMPANY, Inc. v. R. L. DIXON.

(Filed 9 November, 1916.)

1. **Banks and Banking—Bills and Notes—Place of Payment—Deposits—Order to Pay—Payment.**

Where the bank of deposit of the maker of a note is the one specified as the place of its payment, and also the one to which the note is sent at maturity for collection, the maker's written order on the note to the bank to pay it from his deposits is sufficient; and where the bank accepts this order and retains the note without entry on its books for twelve days, then its doors are closed and a receiver appointed, the payee of the note is held responsible for the acts of its agency for collection, and a plea of payment is good. In this case the maker's deposits were barely sufficient at the time, but more than sufficient on the day following and then continuously so.

2. **Banks and Banking—Bills and Notes—Place of Payment—Order to Pay—Statutes.**

A note payable at the bank of the maker's deposit is, of itself, an order on the bank to pay the note at maturity for the account of the maker. Revisal, sec. 2237.

CIVIL ACTION tried before *Cline, J.,* at December Term, 1915, of CASWELL.

This is an action on a note, tried in the Superior Court, on appeal from a justice of the peace, on the following agreed facts, the plea of the defendant being payment:

1. That the plaintiff is a corporation located and doing business in the State of Kentucky.

2. That the defendant is a citizen and resident of the county of Caswell, State of North Carolina.

3. That on 15 September, 1914, the defendant signed and delivered to the plaintiff his promissory note in words and figures as follows:

15 September, 1914.

Sixty days after date I promise to pay to the order of Peaslee-Gaulbert Company, Inc., $100, for value received. Negotiable and payable without offset at the Bank of Caswell, Milton, N. C. We, the makers and indorsers of this note, hereby waive the benefit of our homestead exemptions as to this debt.  (Signed)  R. L. DIXON.

4. That the plaintiff deposited the note with its bank in Louisville, Ky., for collection, which said bank forwarded same directly to the Bank of Caswell for collection.

5. That said note was, on 16 November, 1914, presented to the defendant by Henry Hines, employee of and collector' for the Bank of Caswell. The defendant wrote across the face of the note, "Charge to my account," and thereunder signed his name, "R. L. Dixon," and returned the said note to the said Henry Hines. The said Henry Hines accepted the indorsement of the defendant and took the note to the Bank of Caswell and delivered the same to the cashier, who received the note and looked at the indorsement placed thereon by Mr. Dixon, and said it was all right. The defendant heard nothing further from the bank about the note, nor received any information from the plaintiff or any other source that the Bank of Caswell did not make proper remittance to plaintiff, nor that said bank had not charged the same to defendant's account, until after the bank examiner took charge of said bank.

6. That on said 16 November, 1914, the defendant had to his credit in the Bank of Caswell the sum of $98.98, and on the next day, 17 November, 1914, he deposited the sum of $101, and later at different times made two other deposits thereafter in said bank, and at all times from and after 16 November, up to the time the said Bank of Caswell was taken in charge by the State examiner, to wit, 28 November, 1914, had more than sufficient funds in said bank to pay the said note.

7. That the said Bank of Caswell closed its doors on 28 November, 1914, the bank examiner taking charge thereof on the said 28 November, 1914, and said bank was placed in the hands of a receiver.

8. That S. A. Hubbard, bank examiner, found this note in the Bank of Caswell on 28 November, 1914, and returned it to the plaintiff.

9. That the said note was not charged to the defendant upon the books of the said bank, nor was there any entry on the bank books showing payment to the plaintiff.

10. That the defendant, in filing his claim against the receiver of the Bank of Caswell as a creditor, by reason of his deposits in the bank, deducted from the amount of his said claim against the bank by reason of his deposits the sum of $100, the amount of note sued on herein.

Upon the foregoing facts his Honor charged the jury as follows:

"The issue in this case which we are now trying is, 'Is the defendant indebted to the plaintiff, and if so, in what amount?' I instruct you, under the whole evidence, if you believe it all, as a matter of law following in connection with the evidence it would be your duty to answer this issue, 'No; nothing.'" Plaintiff excepted.

The jury having returned the verdict for the defendant, as set out in the record, his Honor entered judgment accordingly. Plaintiff excepted and appealed.

*M. C. Winstead and Carver & Winstead for plaintiff.*
*Ivie, Trotter & Johnston for defendant.*

ALLEN, J. His Honor sustained the plea of payment of the defendant, and the question for decision is whether this ruling is correct on the agreed facts.

The note was payable at the Bank of Caswell, and this was "equivalent to an order to the bank to pay the same for the account of the principal debtor thereon" (the defendant). Rev., sec. 2237.

In addition to this, the Bank of Caswell was the agent of the plaintiff for collection (3 R. C. L., 639; 7 C. J., 597; *Bank v. Floyd,* 142 N. C., 187), and when the note was presented to the defendant for payment he wrote on it a direction to the bank to charge to his account, which the cashier said was all right.

The note remained in the bank for twelve days, with this order indorsed thereon unrevoked, and while the amount to the credit of the defendant when the order was given was slightly less than the note, and the bank had no right without special authority to accept a part payment (7 C. J., 615), the defendant on the next day after the order was given deposited with the bank money amounting to more than the note, and thereafter kept more than that amount to his credit.

These facts, in our opinion, constitute a payment of the note.

The question has been decided in favor of the defendant by the courts of New York, which, like our State, has adopted the uniform

Negotiable Instrument Law, in an opinion supported by reasoning satisfactory to us, from which we quote at some length.

"The plaintiff knew when it sent the note to its agent that if the makers were in funds it would be paid by charging it to their account. Thus the subsequent transaction is to be viewed as though it had occurred directly between the plaintiff and the defendants, the latter being depositors of the former. What would constitute payment between the immediate parties should equally constitute payment though an agent for one intervened. The case in brief is this: A bank, the holder of a note, or the agent of the holder to collect, has funds in its hands upon which the makers are entitled to draw; after the note is due it is directed to charge the note against that credit, and says it will do so. All that is necessary to constitute payment is the intention to make the application, which may be evidenced in a variety of ways, e. g., by bookkeeping entries, by canceling the note and surrendering it to the makers, by the drawing of a check by the makers and its acceptance in payment by the bank. It must be borne in mind that the plaintiff selected an agent to collect, knowing that in the usual course of business payment would be made by a mere transfer of credits. If the makers had actually gone to the bank and passed the necessary currency over its counter to pay the note, with a direction thus to apply it, that would plainly have constituted payment. (*Smith v. Essex County Bank,* 22 Barb. (N. Y.), 627.) If they had sent a check drawn on the bank to pay the note, the acceptance of it would have been *per se* an appropriation of the funds of the drawer, or, to be accurate, of the funds subject to the drawer's order, to the payment of the note. *Oddie v. National City Bank,* 45 N. Y., 735; 6 Am. R., 160; *Commercial Bank v. Union Bank,* 11 N. Y., 203; *Pratt v. Foote,* 9 N. Y., 463. The verbal order, with the statement of the president of the bank that it would be acted upon, was the equivalent in legal effect of a written order and its acceptance. It is to be noted that in the second of the cases just cited the bank to which payment was made was an agent to collect. That mere bookkeeping entries, or even the cancellation and surrender of the paper, is but evidence of and does not constitute payment is established by the cases holding that where payment is made by a draft or check which is not paid, the paper can be reclaimed and an action maintained upon it. See *Burkhalter v. Erie Second Nat. Bank,* 42 N. Y., 538, and cases cited. The converse must be true, that payment may be made without that particular evidence of it. . . . In considering the cases on the question of payment, it is essential to keep in mind the precise relation of the parties. The agency of the Watkins bank is the vital fact in this case. If it in fact

accepted an appropriation of the maker's credit with it in payment of the note, that should constitute payment in view of the fact that the plaintiff in sending the note to it for collection must have expected that payment would be made in exactly that way. That risk at least is taken in appointing a bank, where a note is payable, agent to collect it. It is not important how the bank evidenced its acceptance of the maker's verbal order, or whether it did anything to remit the proceeds to its principal. . . . The act and the evidence of it must not be confused. The act in this case was the acceptance of the maker's verbal order to charge the note to their account. Making the bookkeeping entries would merely have created evidence of that act. When that verbal order was accepted the maker's credit was irrevocably appropriated *pro tanto* to the payment of the note precisely as though a written order in the form of a check had been presented and accepted. . . . Thereafter it was of no concern to the defendants what bookkeeping entries were made by the plaintiff's agent or whether it remitted the proceeds of the note." *Bank v. Smith,* 215 N. Y., 76; 7 C. J., 627; *Shafer v. Olson,* 43 L. R. A. (N. S.), 762.

As was said in 3 R. C. L., 641, referring to the right of a collecting bank to receive a check on itself as a payment, the defendant should not have been required "to go through the idle ceremony of withdrawing the money from the bank and paying it back to the bank."

The defense of the defendant in this action is stronger than in the New York case because here the defendant gave a written order to charge to his account, and while this order was held by the bank, he paid in money more than the amount of the note to the bank.

No error.