STATE OF IOWA, Appellee, v. VERN I. DOUDNA, Appellant.

No. 44042.

FEBRUARY 14, 1939.

McCoid, McCoid & McCoid, E. H. Lundy, D. W. Dickinson, and John L. Butler, for appellant.

John H. Mitchell, Attorney General, Buell McCash, Spec. Asst. Attorney General, Harold McLeran, County Attorney, and J. V. Gray, Spec. Asst. County Attorney, for appellee.

OLIVER, J.—Appellant, Vern I. Doudna, from June 1935 to December 1936, was engaged in the business of selling livestock at Winfield, Iowa. These operations were carried on under the name of Doudna Livestock Co., and while the business appears to have been conducted by appellant alone there is some evidence in the record that it was a joint enterprise participated in by Mrs. Doudna. The banking business was done with The First Bank & Trust Co. of Ottumwa, Iowa, about 65 miles from Winfield. The costs of operating said enterprise and the purchases of livestock were paid with certain written instruments having the appearance of checks. These instruments were not on the regular form furnished by the bank, but were on a form appellant himself secured and habitually used and which were always considered and treated by the bank as checks. More than four thousand of these instruments were so handled and cashed by the bank during the time of defendant's operations and the parties who received them appear usually to have regarded them as ordinary checks.

On November 27, 1936, an employee of Mrs. Kathryn Brandmeyer, the complaining witness, under her instructions, delivered to appellant, at Winfield, 10 hogs belonging to Mrs. Brandmeyer. After securing possession of said hogs appellant paid for the same with an instrument in the form of a voucher check to Mrs. Brandmeyer for $204.42. This instrument, which was dated November 28, was handed said employee by appellant at about 7 p. m., which was after banking hours on the 27th, and too late to cash it that day. The employee took the instrument to Mrs. Brandmeyer, she deposited it in her account in Henry County Savings Bank, it was forwarded through channels to the First Bank & Trust Co. of Ottumwa, Iowa, was not paid and was returned to Henry County Savings Bank, and charged to Mrs. Brandmeyer's account. When the instrument was executed and uttered by appellant, and at all times thereafter, there were not sufficient funds in the Doudna Livestock Co. account in the First Bank & Trust Co. to pay the same.

Shortly thereafter appellant was, on account of said transaction, indicted, tried, convicted and sentenced, under Code section 13047, for the crime of false uttering a bank check, draft or written order. This appeal has been taken from the judgment and all adverse rulings.

I. It is contended by appellant that the instrument in

question is a note, and not a check or written order upon a bank, and, therefore, is not within the purview of the statute. The bank is named in the instrument, says appellant, merely as a place for payment and not as the party to whom the instrument is addressed. Therefore, appellant avers, the instrument cannot be a check or order because it contains no drawee. For this reason appellant would have Exhibit 1 construed as a promissory note.

The record shows that both appellant and certain parties with whom he dealt, in conversations with each other, referred to this form of instrument as a check. It further appears that said form of instrument was at all times regarded and treated by the First Bank & Trust Co. as a check, and that about 4,000 such instruments were so handled and cashed by the bank during the year and a half in question. The record also shows appellant admitted to a witness the instrument couldn't be considered a check and that it was used to protect himself in case of financial reverses.

The instrument, which is known as Exhibit 1, has the appearance of an ordinary check. In the upper right-hand corner, in small print and writing, are the words "Ottumwa, Iowa, Nov. 28, 1936". In the upper right, in largest print, "No. 6131", in the upper center, in largest print, "Doudna Livestock Co.", and immediately below, in medium print, "Winfield, Iowa". At the left center, in small print, "will pay to the order of", followed by a line across the instrument upon which is written "Mrs. Katherine Brandmeir $204.42". Immediately below this is another line upon which was written "Two Hundred and Four 42/100", followed by the word "Dollars" in print. At the left bottom, in small print, the words "payable at", underneath those words, in large print, "The First Bank & Trust Co.", and below those words, in small print, "Ottumwa, Iowa". In the place for signature at the right bottom, in medium print, "Doudna Livestock Co.", below which is a line upon which is the printed word "By", and written "Vern I. Doudna (Mgr.)". On the back of the instrument is printed the following, "By his endorsement hereon the payee represents and guarantees that he was at the time of issuance hereof the sole and unconditional owner of the livestock for which this paper is given and that there are no mortgages or other liens against such livestock", underneath which was a

line for signature, at the end of which was printed the word "payee", and immediately under said line is printed the following, "Payment will not be made unless payee signs upon the above line."

The voucher attached to this instrument, and known as Exhibit 2, recites that it was issued to Mrs. Katherine Brandmeir, Nov. 28, 1936, and "the above is in full settlement for 10 brd., weight 2210, price 9.25, total amount 204.42". It will thus be noted that the instrument has all the characteristics of an ordinary check rather than a note, except the word "will" in small print before the words "pay to the order of", also in small print, and except that it contained the words "payable at" above the name of the First Bank & Trust Co.

The instrument is cleverly constructed and it is evident that the form was prepared for the specific purpose, in part at least, of rendering appellant immune from criminal prosecution under Code section 13047, upon which he was tried and convicted in this case. The form of the instrument which is strikingly similar to an ordinary business check and not at all like the ordinary form of promissory note, the size of the type used in various portions thereof and its wording, and the arrangement thereof, bear evidence in confirmation of this. Apparently, for the studied purpose of completing the analogy, the instrument expresses no time when it shall be paid, like a check, but very unlike the ordinary printed note form. Furthermore, the fact that endorsement is required by the payee and the wording of the printing on the back of the instrument show a deliberate attempt to put the instrument in such form that it might be endorsed, as a check, at the time of payment, instead of being cancelled as is customarily done in the case of a paid note.

In Negotiable Instruments Law, chapter 424 of the Code, is the following:

"9477. [§17.] Construction. Where the language of the instrument is ambiguous, or there are omissions therein, the following rules of construction apply: * * *

"5. Where the instrument is so ambiguous that there is doubt whether it is a bill or a note, the holder may treat it as either, at his election."

"9548. [§87.] Rule where instrument payable at bank. Where the instrument is made payable at a bank it is equiva-

lent to an order to the bank to pay the same for the account of the principal debtor thereon.''

This court has not construed the provisions of Code section 9548 with reference to an instrument of this character. However, in a number of cases from other jurisdictions under the Negotiable Instruments Law, this section has been held to mean that where a note is made payable at a bank it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon *and is equivalent to a check.* Brown v. Boston First Nat. Bank, 216 Mass. 298, 103 N. E. 780; Baldwin's Bank of Penn Yan v. Smith, 215 N. Y. 76, 109 N. E. 138, L. R. A. 1918F, 1089, Ann. Cas. 1917A, 500; Commercial Nat. Bank v. Henninger, 105 Pa. St. 496; Heinrich v. First Nat. Bank, 219 N. Y. 1, 113 N. E. 531, L. R. A. 1917A, 655; West St. Louis Trust Co. v. American Surety Co. of N. Y., 222 Mo. App. 393, 5 S. W. 2d 669; Peaslee-Gaulbert Co. v. Dixon, 172 N. C. 411, 90 S. E. 421; Caine v. Foreman, 106 Cal. App. 636, 289 P. 929; Shaw v. R. C. Flick Merc. Co., Tex. Civ. App., 26 S. W. 2d 1077; United States v. Nat. City Bank, 2 Cir., 83 F. 2d 236, 106 A. L. R. 1235.

Some cases which hold to the contrary concede that a rule similar to that would apply in case of a course of dealings between the maker and the bank in which such instruments had been regularly paid, as in the case at bar. Grissom v. Commercial Nat. Bank, 87 Tenn. 350, 10 S. W. 774, 3 L. R. A. 273, 10 Am. St. Rep. 669.

The above cases are not cited with the thought of establishing the doctrines therein enunciated and upon these matters no opinion is expressed. However, they are authorities proper to be considered in construing the instrument in question herein.

It is and has been the general practice of banks to furnish specially printed checks for the use of certain customers, frequently worded in this fashion; John Doe, in large print in the upper center, pay to the order of blank, in small print, at the left center, two lines across the check for payee's name and amount, name of bank in large print, at lower left, and line for signature at lower right. Here we have an instrument uniformly considered and held to be a check. It may be read, ''John Doe pay to the order of blank, one dollar, The First Bank & Trust Co.'' Exhibit 1 may be read, ''Doudna Livestock Co. will pay

to the order of blank, one dollar, payable at The First Bank & Trust Co.''

The variance in the make-up and meaning of these two instruments is not material and it cannot be fairly said that although the former is clearly a check, the latter is not a check but a note. When it is remembered that Exhibit 1 specifically requires that the payee endorse it before payment, the same as any check, there is even less basis for such argument.

We, therefore, hold that the form of instrument, as used by appellant in his dealings, was a check or written order and that Exhibit 1 may properly be designated as a check.

II. An essential element of the crime charged is fraudulent intent. State v. McCutchan, 219 Iowa 1029, 259 N. W. 23. The fraud consists in the securing of the thing of value by giving a check without an arrangement or funds to meet the same. The drawing and delivery of a check carry with them a representation that the drawer has funds or credit with the bank to take care of the same. Leach v. Central Trust Co., 203 Iowa 1060, 213 N. W. 777, 57 A. L. R. 1165. However, the false representations must refer to existing facts and must be more than a promise of future performance.

If, at the time the check is issued, the parties have an understanding that it is not then collectible but will be made so at some time in the future, the representations made in connection with such issue are ordinarily held to be only a promise. On the same theory the giving of a check dated in the future has sometimes been regarded as impliedly saying that the check was not then collectible coupled with a promise that it will be cashable upon the date mentioned therein.

In the case at bar the evidence shows that the check, Exhibit 1, was issued on November 27, after banking hours, and was dated November 28, the reason given by appellant being that it was after banking hours on the 27th, and too late to cash it that day. This statement, under the circumstances, was sufficient to negative the inference that the check was not then good because it was postdated.

The doctrine that criminal liability may not be predicated upon a postdated check is not based upon the fact that a check bears a date later than the *date* of its delivery. The reason for such holding is that the representations made refer to a *time* subsequent to its delivery. For example, an accused would not

be guilty of this crime, if, on November 28, 1936, at 9 a. m., he delivered a check bearing the same date with the understanding of both parties that it was not then collectible and which he promised to make cashable by 3 p. m. of that day.

The check in this case was given by appellant on November 27, after the bank had closed for the day. There was no representation that the check was not then cashable. On the contrary the giving of the check and the statements made at the time, in connection with the surrounding circumstances, were representations as to an existing condition, the same as though it had been given at 6 a. m., on November 28.

A member of the First Bank & Trust Co. testified that at the time that bank closed its business for the day, on November 27, the balance in the Doudna Livestock Co. account was only $92.10, that no further deposits were made on November 28, 29 or 30, and that the account ceased to be active on December 5. This witness testified also that no arrangement had been made with the bank for cashing overdrafts on this account. That appellant knew there was no such arrangement was shown by the evidence of at least thirteen different witnesses, who had received or handled one or more of these instruments upon which payment had been refused by the bank, some about or shortly before the time in question herein and others a few months previous thereto.

On these various occasions appellant was apprised that the bank had refused payment on said respective instruments and thereupon he took care of most of them. In one instance he gave a note, in another he settled with the Crawfordsville Bank which was holding the instrument, in two instances he gave new ''checks'' which were later returned unpaid, in five instances he gave new ''checks'' which were paid, and in the other four cases the instruments were settled for or paid in part or in full. Six of these witnesses were called by appellant and gave this testimony in his behalf. It may be said here that other witnesses testified that various of these instruments given by appellant had been returned unpaid and were still unpaid at the time of the trial.

Furthermore, one witness testified that when he brought the second unpaid instrument back to appellant, appellant said ''he had been having a little trouble with his funds, and they kept him worried''. Later, during the month of December 1937,

appellant told this witness "he was just going kind of on a floating scale", and that "there never was a time that he had sufficient funds to pay us out in full". Therefore, appellant must have known that the bank would not pay Exhibit 1 unless there were sufficient funds in the account to meet it.

There was never any idea in the mind of the seller of the livestock or her employee that the sale was not for cash. Nor could the words and actions of appellant at the time be construed to convey any such intimation. In securing the livestock and giving the check appellant said, partly in words and partly by inference, "this check is now good but it cannot be cashed until the bank opens tomorrow, therefore, I have dated it tomorrow". The evidence shows that at the time the check was given, and at all times subsequent thereto, there were not funds in nor any arrangement with the bank sufficient to meet or pay the same. Under the circumstances the date of the instrument is not a bar to the prosecution in this case.

This conclusion has been reached after examining numerous authorities from this and other jurisdictions cited by the parties, and many located by independent research. The outside cases either are not in point on the facts or enunciate legal doctrines at variance with those heretofore expressed by this court. The facts in this case bring it within the rule laid down in State v. Cooper, 169 Iowa 571, 151 N. W. 835, which was a prosecution based upon false pretenses in giving a check postdated one day (which was not noticed by the recipient) with the representation that the check was then good. In that case the court said, loc. cit. 576, 151 N. W., loc. cit. 838:

"Dating it ahead was not a mere promise, and the jury may well have found that the whole transaction was a device to cheat. This decision is based upon the fact that false representations were made when the check was delivered."

III. Appellant contends that the issuing of the check signed by him as manager of Doudna Livestock Co. relieves him from criminal liability. In connection with this it is argued that he was not civilly liable. This proposition is not tenable. A person who operates a business under a trade name or as a member of a joint enterprise is civilly liable for its obligations. No citations are necessary in support of this rule. It is not essential in a prosecution of this nature that the accused

obtained the property for himself. State v. Chingren, 105 Iowa 169, 76 N. W. 946. Nor can he escape criminal responsibility by placing the word *manager* after his signature.

As said in State v. Cooley, 141 Tenn. 33, 206 S. W. 182, 184, in passing upon the criminal liability of an officer of a corporation:

"If he draws the check as the representative or officer of a corporation, he is none the less the maker or drawer within the contemplation of this statute, and the fraud which the statute is designed to prevent is personal to him. There is no doctrine of agency in the criminal law which will permit an officer of a corporation to shield himself from criminal responsibility for his own act on the ground that it was the act of the corporation and not his personal act."

See, also, State v. Stratford, 55 Idaho 65, 37 P. 2d 681; Milbrath v. State, 138 Wis. 354, 120 N. W. 252, 131 Am. St. Rep. 1012.

IV.' The correctness of each and all of the instructions given to the jury is questioned by appellant. Most of the questions raised by these objections to instructions and refusal to give requested instructions have been disposed of hereinbefore. Taken as a whole the instructions correctly and fairly advised the jury of the legal propositions involved in the case. In some respects they were more favorable to appellant than he was entitled to demand. We find no prejudicial error therein.

V. The admission in evidence of certain notarial certificates of protest is urged as error. However, the only assignments of error in the brief are based upon the charge that the court refused to direct a verdict because of failure to prove proper presentment of the check in question herein, also that it was error to admit the certificate of protest attached to said instrument and other certificates of protest because they were not in proper form and did not show that all necessary steps were taken in connection with the alleged protest of said instruments.

The first of the above objections is not well taken for the reason that proof of presentment and protest were not essential elements in the state's case. The lack of arrangement, understanding or funds to meet the check were sufficiently shown by the testimony of the witness, banker Trautwein, and

no proof of presentment or protest was required. Nor were the certificates of protest vulnerable to the objection that they were not in proper form. They substantially comply with the provisions of Code section 9614.

From the record as a whole it appears that the evidence of appellant's guilt was convincing. No reversible error is shown and the case is, therefore, affirmed.—Affirmed.

MITCHELL, C. J., and HAMILTON, BLISS, RICHARDS, MILLER, STIGER, and SAGER, JJ., concur.

HALE, J., takes no part.