**STATE of Iowa, Appellee,**

v.

**James B. KIMBALL, Appellant.**

**No. 55291.**

Supreme Court of Iowa.

Dec. 20, 1972.

Whitesell Law Firm and Larry A. High, Iowa Falls, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., and Clark E. McNeal, Hardin County Atty., for appellee.

Heard before MOORE, C. J., and Le-GRAND, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

UHLENHOPP, Justice.

The principal question in this case relates to defendant's right to speedy trial.

The chronology of events is pertinent. In 1969 defendant James B. Kimball was convicted of falsely uttering a check. He appealed and this court reversed the judgment and ordered a new trial. State v. Kimball, 176 N.W.2d 864 (Iowa). On June 8, 1970, this court issued procedendo directing the district court to proceed with the cause. Attorney Don J. Wilson represented defendant continuously throughout those proceedings and until October 19, 1970. Defendant was in a federal penitentiary in Kansas when procedendo issued, having been convicted of a federal offense.

On October 14, 1970, the district court assigned the second trial for October 27, 1970. On October 19, 1970, Mr. Wilson filed a "disclaimer" (withdrawal?) and a letter from defendant in which defendant asked for the date of trial and stated he was indigent. On the same day the clerk of district court mailed notice of the trial date to defendant. On October 26, 1970, the district court reappointed Mr. Wilson as defendant's attorney and the next day reassigned the trial for November 30, 1970.

On November 23, 1970, Mr. Wilson moved for a continuance, and trial did not begin on November 30th. On January 25, 1971, the district court reassigned the trial for March 16, 1971. On the latter date the case was called for trial. Neither Mr. Wilson nor defendant appeared, so trial could not go forward. The State unsuccessfully attempted by various proceedings to forfeit defendant's bail, but those proceedings are not controlling on the problems before us.

On April 28, 1971, by mail, defendant himself filed a motion to dismiss the case, based on the speedy trial clause of the Sixth Amendment to the United States Constitution made applicable to the states by the Fourteenth Amendment. Apparently this motion was not called to the court's attention at the time.

On June 28, 1971, the district court reassigned the trial for September 21, 1971, again reappointed Mr. Wilson as defend-

ant's attorney, and issued a writ of habeas corpus prosequendum for the production of defendant at trial.

On August 4, 1971, the district court overruled defendant's motion to dismiss which was filed April 28, 1971, having been requested by letter from defendant to rule on it.

On August 17, 1971, Mr. Wilson applied to withdraw as defendant's attorney, and by letter defendant consented to the withdrawal. On August 31, 1971, the district court permitted Mr. Wilson to withdraw and appointed Whitesell Law Firm as defendant's attorneys, and that firm has since represented him. On September 13, 1971, the district court authorized defendant's attorneys to interview defendant in Kansas.

On September 15, 1971, defendant filed a motion asking, among other things, that the case be dismissed because defendant was not retried within 60 days as required by § 795.2 of the Code of 1971 and because he was not speedily tried as required by the Sixth Amendment to the United States Constitution made applicable by the Fourteenth Amendment. On September 21, 1971, the motion was overruled.

Prior to trial, defendant was brought to Iowa by a deputy United States marshal, and while in Iowa he was in the deputy marshal's custody pursuant to federal regulations. During the nights of the trial, he was incarcerated by the deputy marshal in Waterloo, Iowa. Each morning he was brought to the place of trial in Eldora in time to confer with his attorneys, and after adjournment each day he was also permitted to confer with them. He was with his attorneys, of course, throughout the trial itself.

Trial commenced September 22, 1971. The evidence showed that defendant bought some cattle at a sale barn for $10,475.36 and delivered his check to the sale barn in that amount. The check was drawn on the Security State Bank of Radcliff, Iowa, and was marked "Special Account." The sale barn en-

dorsed the check with its endorsement stamp, "Payable to the Order of the First National Bank, Eldora, Iowa." The manager of the sale barn became suspicious about the check, however, and presented it directly to the Security State Bank the day after the check was received. That bank refused payment because defendant did not have funds there.

The evidence also showed that the Security State Bank had two signature cards signed by defendant. One was for a special account, but this account had not been opened by a deposit of funds. The other was a joint account of defendant and his wife. That account previously contained funds, but on the day the check was delivered it contained only 88 cents and on the next day it was overdrawn 12 cents. Exhibits B, the signature card for the joint account, and C, the bank record showing the status of that account, were introduced over defendant's objection.

An officer of the Security State Bank testified defendant had neither funds nor any arrangement with the bank for payment of the check.

At the conclusion of the evidence, defendant requested an instruction to the jury that refusal by the bank to make payment of a check presented in the usual course of business is material and competent evidence of lack of an arrangement, understanding, or funds to pay the check. The trial court refused to give the instruction.

The jury found defendant guilty, and the trial court pronounced sentence. Defendant appealed.

Defendant assigns four errors: the trial court erred in (1) denying defendant effective assistance of counsel, (2) admitting exhibits B and C, (3) refusing to give his requested instruction, and (4) overruling his motions regarding speedy trial.

■ I. *Confinement in Waterloo.* Defendant's contention that he was denied ef-

fective assistance of counsel is predicated on being confined nights in Waterloo. This contention is a factual matter, and the facts are against defendant. He was in custody of a deputy United States marshal who did, it is true, confine him nights in Waterloo. While so confined, defendant was not available to counsel. But the evidence shows that defendant was not otherwise denied access to his attorneys. Prior to trial, the district court authorized defendant's attorneys to visit him in Kansas. During trial, defendant was brought to Eldora before court opened to consult with his attorneys and was kept at Eldora after adjournment to confer with them. During the day, of course, he was with his attorneys. We cannot uphold this assignment of error on the facts. See Kime v. Brewer, 182 N.W.2d 154, 156 (Iowa) ("reasonable opportunity to perform the task"); United States v. Gordon, 455 F.2d 398 (8 Cir.).

■ II. *Exhibits B and C.* Defendant contends that the check was marked "Special Account" and that the trial court should have admitted only bank records pertaining to that account—not exhibits B and C relating to his joint account. This, too, is largely a factual matter.

The State had to prove that defendant uttered the check "with fraudulent intent" and that he did not have "an arrangement, understanding, or funds with such bank, person, or corporation sufficient to meet or pay the same. . . ." Code, 1971, § 713.3. The proof by the State that defendant did not have funds in either of the accounts to pay the check negatived any contention that the check was mistakenly drawn on the wrong account and established that defendant did not have "funds with such bank" sufficient to pay the check.

Trial courts have discretion on the question of relevancy of evidence. State v. Clark, 187 N.W.2d 717 (Iowa). The trial court did not abuse its discretion in admitting exhibits B and C.

III. *Requested Instruction.* Defendant's requested instruction was under § 713.4 of the Code of 1966 ("The fact that payment of said check . . . when presented in the usual course of business shall be refused by the bank . . . upon which it is drawn . . . shall be material and competent evidence of such lack of arrangement, understanding, or lack of funds."). That statute was in effect when the check was uttered but not at the time of the second trial. See § 713.4, Code, 1971. Defendant contends that the former statute applied at the time of the second trial and that his instruction should have been given.

We need not decide whether the former statute applied as of the time of the second trial. Neither need we decide whether the check was "presented in the usual course of business"—at trial, defendant emphasized that the endorsement was to the order of the First National Bank rather than to the Security State Bank to which the check was presented. Resolving both of those questions in defendant's favor for the purpose of argument, no error was committed so far as defendant is concerned. The statute defendant relies on is for the assistance of the State.

■ When the other elements exist, the crime under § 713.3 is complete whether or not the check is· ever presented to the drawee. State v. Doudna, 226 Iowa 351, 284 N.W. 113. Section 713.4 of the 1966 Code merely gave the State an evidentiary assist; if a check was presented in usual course, and payment was refused, those facts could be shown as evidence of lack of an arrangement or funds to pay the check, without the necessity of calling the banker. The statute did not provide the reverse—that failure so to present the check constituted affirmative proof the drawer *did* have an arrangement or funds.

No error against defendant appears here.

IV. *Speedy Trial.* Defendant places his principal reliance on his claimed denial of speedy trial and he cites (a) § 795.2,

Code, 1971, and (b) the Sixth and Fourteenth Amendments to the United States Constitution.

■ (a) Defendant contends that § 795.2 applies on remand of an appealed case. But see Ferguson v. Bechly, 224 Iowa 1049, 277 N.W. 755. We may accept his contention arguendo, as it would not change the result we reach. Section 795.2 requires trial within 60 days after indictment (here, procedendo, under defendant's contention) unless good cause is shown, but a defendant represented by counsel or at bail is required to demand trial in order to take advantage of the time limitation. State v. Johnson, 167˙ N.W.2d 696 (Iowa); Parrott v. Haugh, 158 N.W.2d 766 (Iowa). A motion to dismiss is not a demand for trial. State v. Lindloff, 161 N.W.2d 741 (Iowa).

At no time was a demand for trial filed. Defendant was represented by an attorney at all times except for a possible seven-day period—from October 19, 1970, when Mr. Wilson filed a "disclaimer," to October 26th, when he was reappointed as defendant's attorney. See 7 C.J.S. Attorney & Client § 73c at 880 ("Where the relation of attorney and client is shown to have existed in a particular case or litigation, there is a presumption of the continuation of such relation, in the absence of a showing that the relation has been terminated or discontinued."); 7 Am.Jur.2d Attorneys at Law § 113 at 117 ("the entry of appearance by an attorney is itself presumptive evidence of his authority to represent the person for whom he appears"). Since a demand for trial was not filed, the trial court properly refused to dismiss the case under the statute.

■ (b) The federal constitutional right to speedy trial was recently expounded by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. The Court rejected a rigid approach and, instead, enumerated four factors to be considered: length of delay, reason for delay, the defendant's assertion

of his right to speedy trial, and prejudice to the defendant. As to prejudice to the defendant, the Court identified three interests: prevention of excessive pretrial incarceration, minimization of anxiety of the defendant, and impairment of the defense by lapse of time. That case involved 16 continuances over a period exceeding five years. Under the circumstances of that case, the Court held the right to speedy trial was not violated.

The present case involves about 15-months delay. But within that period, the case was set for trial four times. It was tried on the fourth occasion. It was not tried on the previous three occasions because of defendant's incarceration in Kansas, and on one of those occasions defendant moved for a continuance. The State must, however, accept some responsibility for the delay; the State could have sought a writ of habeas corpus prosequendum sooner. See Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (seven-year delay during which accused repeatedly requested state to secure his return for trial). But the number of assignments for trial here indicates that the prosecutor was not simply dilatory. Moreover, at no time did defendant demand trial or request return for trial, a factor which is to be considered in connection with defendant's claim he was denied a speedy trial.

As to prejudice from the delay, defendant was not confined at all under the present charge while awaiting trial; he was in a penitentiary for another offense. Nor do the proceedings support a claim of actual impairment of the defense from lapse of time.

We hold, under the Barker decision, that defendant's federal constitutional right to speedy trial was not violated.

Defendant was fully and vigorously defended, and we are satisfied he had his rights. The verdict and sentence should stand.

Affirmed.