### JESS KINNAN V. STATE OF NEBRASKA.

FILED MARCH 10, 1910. No. 16,151.

1. **Sodomy: INDICTMENT: SUFFICIENCY.** The act charged in the indictment does not constitute the infamous crime against nature prohibited by section 205a of the criminal code.

2. **Evidence: SUFFICIENCY: QUÆRE.** Sufficiency of the evidence to identify the defendant as the person who performed the acts complained of, questioned.

3. **Criminal Law: EVIDENCE: REVIEW.** The admission of evidence of the finding of footprints in the corn field where it is alleged the unlawful act occurred, not shown to have been made by any shoes ever worn by the defendant, and not connected with him in any way except that they led in the direction of his home, *held* reversible error.

ERROR to the district court for Antelope county: AN-SON A. WELCH, JUDGE. *Reversed.*

*N. D. Jackson, C. H. Kelsey, William V. Allen* and *William L. Dowling,* for plaintiff in error.

*William T. Thompson, Attorney General, George W. Ayres* and *M. F. Harrington, contra.*

BARNES, J.

Jess Kinnan, hereafter called the defendant, was tried in the district court for Antelope county upon the charge of committing the infamous crime against nature, defined in section 205a of the criminal code by penetration *per os.* He was convicted, was sentenced to the penitentiary for a term of ten years, and has brought the case here for review.

Before going to trial, defendant, by motion and demurrer, challenged the sufficiency of the information on the ground that the facts set forth therein did not constitute a violation of the section of the criminal code above cited, and now strenuously renews that contention. The identical question here presented has been deter-

mined by the supreme judicial tribunals of many of our sister states. In *People v. Boyle,* 116 Cal. 658, under a similar statute, the defendant was convicted of a felony, which was technically designated in the information as an assault with intent to commit "the infamous crime against nature." The supreme court of that state held that the facts of the case, which were the same as in the case at bar, did not make out the offense of which the defendant had been convicted. By the statutes of Texas, "the abominable and detestable crime against nature" is made a felony, and the supreme court of that state has many times decided that such facts as shown in this case do not constitute that crime. *Mitchell v. State,* 49 Tex. 535, 95 S. W. 500; *Prindle v. State,* 31 Tex. Cr. Rep. 551, 37 Am. St. Rep. 833; *Lewis v. State,* 36 Tex. 37, 35 S. W. 372; *Harvey v. State,* 55 Tex. 199, 115 S. W. 1193. In *Commonwealth v. Poindexter,* 118 S. W. (Ky.) 943, the supreme court of Kentucky considered this question, and in a very able opinion reached the same conclusion. This view of the question was adopted by the supreme court of Ohio in *Davis v. Brown,* 27 Ohio St. 326, and thereafter the legislature of that state enacted a statute to cover such a case. In *Estes v. Carter,* 10 Ia. 400, a like construction of a similar statute was adopted, and thereupon the legislature passed an act to supply the defect in the criminal law. Iowa code, Supp. 1907, sec. 4937a. The supreme court of Indiana in *Ausman v. Veal,* 10 Ind. 355, 71 Am. Dec. 331, adopted this rule, and such has always been the understanding of the text-writers. See 2 Bishop, New Criminal Law, sec. 1193; 25 Am. & Eng. Ency. Law (2d ed.) 1145; 3 Russell, Crimes, 250; 2 McClain, Criminal Law, sec. 1153, and 1 Wharton, Criminal Law (10th ed.) sec. 579. As opposed to this overwhelming weight of authority counsel for the state have directed our attention to *Means v. State,* 125 Wis. 650, and *Honselman v. People,* 168 Ill. 172. In the Wisconsin case the supreme court held that an act similar to the one in question in this case was a violation of section 4591 of

the statutes of that state, but this statute specifically includes the act charged here, hence the case is no authority on the point.

From the foregoing it clearly appears that the ruling in that case is of no assistance to us in the case at bar. Counsel, however, ask us to adopt the extraordinary language of the Wisconsin court that "there is sufficient authority to sustain a conviction in such a case, and, if there were none, we would feel no hesitancy in placing an authority upon the books." We cannot approve of this language. There is no doubt but that the Wisconsin case was correctly decided, and it was unnecessary for the court to use the language above quoted. It is not within the powers of the judicial branch of the government to place rules upon the books, or enact laws to define or punish crime. Those matters are wholly within the province of the legislature, and we are satisfied that the Wisconsin court did not intend its language to be understood as it is now interpreted by counsel for the state. In the Illinois case it appears that the legislature of that state, as a part of its criminal code (section 279), enacted the following: "Every person convicted of the crime of murder, rape, kidnapping, wilful and corrupt perjury or subornation of perjury, arson, burglary, robbery, sodomy, *or other crime against nature,* incest, larceny, forgery, counterfeiting, or bigamy, shall be deemed infamous", etc. So it seems clear that the decision of the Illinois supreme court turned upon the particular definition of crimes given by the statutes of that state.

Our statute fails to define the manner in which the infamous crime against nature may be committed, and it is therefore apparent that, when the legislature passed the section of our criminal code here in question, it had in mind the usual or common law definition of that crime, and as the acts charged in the information do not fall within that definition they must be held insufficient to constitute the infamous crime within the meaning of that section. Again, we have frequently held, and it is now set-

tled beyond question, that there are no common law crimes in this state, and we only resort to common law definitions where general terms are used to designate crime. Section 251 of our criminal code in express terms provides: "This code and every other law upon the subject of crime which may be enacted shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects, and no person shall be punished for an offense which is not made penal by the plain import of the words, upon pretense that he has offended against its spirit." In *Bailey v. State*, 57 Neb. 706, it was said: "To sustain a criminal conviction it is not enough for the state to show that the prisoner indicted has violated the spirit of the statute, but the evidence must show beyond a reasonable doubt that he has offended against the very letter of the law." In view of the section last above quoted, and of the construction placed thereon by this court, we are constrained to hold with the great weight of authority that the acts charged in the information in this case, although they amount to an unlawful assault, do not constitute a violation of the provisions of section 205a of our criminal code. It is to be regretted that acts so infamous and disgusting have not been declared to be a felony by the legislature of this state, and we trust that the lawmakers will speedily remedy this defect.

Defendant also contends that the evidence is insufficient to sustain the verdict because of the failure of the state to identify him as the person who committed the act in question. Without deciding this question, we deem it proper to say that the record contains no positive evidence connecting him with the commission of the offense. The prosecuting witness was not sure that he was the man who assaulted her. She said that the man had a cloth over his face, and that he was shaped or built like the defendant, and she thought it was the defendant.

It is further contended that the trial court erred in

the admission of the evidence of witness Stucker as to the footprints found by him in the corn field where it is claimed the transaction occurred. We think this evidence should have been excluded. No testimony was produced showing or tending to show that the footprints were made by the defendant. It is not shown that they corresponded in any way with the shoes worn by him, and the only fact shown which tended to connect him with them in any manner was that they led in the direction of his home. We think this evidence was erroneous and prejudicial to the defendant's rights, and is within the rule announced in *Heidelbaugh v. State*, 79 Neb. 499.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.