OPINION OF THE COURT
Jay Cotler, J.
The defendant is charged with violating section 190.05 of the Penal Law, issuing bad checks, a class B misdemeanor. Claiming that the checks in question were all postdated and that postdated checks could not give rise to criminal liability, the defendant moved pursuant to CPL 170.30 for a dismissal as a matter of law on the grounds of legal insufficiency. This motion raised the issue of what elements New York courts use to define a postdated check which is a question of first impression.
FACTS
From the motion papers the undisputed facts appear to be as follows. The complaining witness did some production work for the defendant. The defendant agreed to pay the complaining witness $9,000. On February 24,1982 the defendant wrote three checks, each in the amount of $3,000. The checks were dated March 1, March 8 and March 15, 1982.
*223 On that day (Feb. 24,1982) the defendant gave the three checks to his attorney, Mr. J. William Rosenbluth of Rosenbluth, Rosenbluth & Rodney. Mr. Rosenbluth then caused the checks to be delivered to the complaining witness on the date of each respective check. That is, the complaining witness received the check dated March 1, 1982 on March 1, 1982 and the other two checks on their respective dates. The checks were deposited and returned for insufficient funds.
On March 23, 1982 the complaining witness swore out the complaint in this matter. The papers before us fail to give sufficient facts to resolve the potentially crucial agency issue.
ISSUE
In the facts described above the complaining witness apparently had no notice that the checks were written prior to the dates on their face. This court must now determine the issue of whether New York defined a postdated check simply as a check written prior to the date on the instrument or whether New York requires an additional element, that additional element being that the person receiving the check must have express or implied notice that the check was written prior to the date on its face.
If a check, delivered to the payee without express or implied notice that the check was written prior to the date on the instrument, is a postdated check within the meaning of the Penal Law then, as a matter of law, this court must grant the defendant’s motion to dismiss. On the other hand, if New York statutes and common law require that the person who received a check to have had notice that the check was written prior to the date on its face to be considered a postdated check, then this court could not say as a matter of law that the checks involved here were postdated. The motion would have to be denied and the matter set down for trial.
The facts in this case established that the checks in question were written prior to the date on the instruments, but failed to establish that the complaining witness had any notice of this established fact. We must now look to the *224 statutes and case law to see if any form of notice is required before the defendant can be excused from criminal liability. The fact that it is possible to avoid criminal liability under the Penal Law by writing a postdated check does not resolve the defendant’s potential civil liability on the checks.
STATUTE
Subdivision 1 of section 190.00 of the Penal Law defines a check as “any check, draft or similar sight order for the payment of money which is not post-dated with respect to the time of utterance.” The Penal Law does not specifically give a definition of postdated checks. However, since the Penal Law only excludes those checks which are postdated with respect to the “time of utterance” from being considered bad checks under section 190.05 of the Penal Law, it is possible to examine how subdivision 4 of section 190.00 of the Penal Law defines the verb “utter” and then extrapolate a rule.
Subdivision 4 of section 190.00 of the Penal Law states that “A person ‘utters’ a check when, as a drawer or representative drawer thereof, he delivers it or causes it to be delivered to a person who thereby acquires a right against the drawer with respect to such check. One who draws a check with intent that it be so delivered is deemed to have uttered it if the delivery occurs.”
Under the extrapolated rule a person receiving a check prior to the date on the instrument is only entitled to the implied notice which comes from the fact that the date on the check is a future date. By applying this rule to the facts stated above we must conclude that the complaining witness was not able to get even this limited notice and hold that on the information before us the checks were not postdated. Unfortunately the result of this extrapolation is unsatisfactory as the heart of the definition of the term “utter” requires one to deliver or cause a check to be delivered without consideration of when the check is received.
The Practice Commentaries in McKinney’s (Hechtman, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 190.05, p 354) explain that the purpose of the definition *225 of the term “utter” was intended to contrast the term “utter” from the term “pass” rather than to further define a postdated check. Nor does the Uniform Commercial Code provide a clear definition of a postdated check except that section 3-114 of the Uniform Commercial Code says that the negotiability of an instrument is not affected by the fact that it is postdated.
Since the statutes fail to give us a clear definition of a postdated check it seems more appropriate to look to the case law rather than to stretch statutory language to the breaking point.
CASE LAW
The courts of this State have a long-standing policy of encouraging the use of postdated checks in the commercial world. In 1834 it was said that “The drawing of post-dated checks is an every day’s occurrence in our commercial cities” CMohawk Bank v Broderick, 13 Wend 133, 135). “Post-dated checks are instruments often used, and their nature and character are well understood by bankers and the trading community.” (Clarke Nat. Bank v Bank of Albion, 52 Barb 592, 600; Bowen v Newell, 8 NY 190.)
In every New York case in which the defendant escaped criminal liability under the bad check statute by use of a postdated check, the person who received the check had express or implied notice that the check had been drawn prior to the date on the face of the instrument. In virtually all the cases cited by the defendant in support of his motion and all the cases found by this court the check in question was delivered prior to the date on its face thereby giving notice of postdating.
In People v Mazeloff (229 App Div 451) the defendant gave the complainant a check bearing the date October 30, 1929. The check was made and delivered on October 3, 1929. Here the paper itself gave notice of postdating. The court explained that no criminal liability attaches to a postdated check as, “Fraud can not be predicated upon nonperformance of a future promise, and a postdated check is a mere promise to discharge a present obligation at a future date.” (People v Mazeloff, supra, p 452.) “[T]he implication of giving a postdated check is that the maker has not *226 presently funds on deposit rather than that he has.” (People v Mazeloff, supra, p 453.) This follows the reasoning of an earlier case where it was held that “the drawer [of a postdated check] is not in funds at the bank on which he draws his check, when he makes and delivers the same, and does not expect to be, until the arrival of the date inserted in the check.” (Clarke Nat. Bank v Bank of Albion, supra, p 600.)
In Azzarello v Richards (198 Misc 723), the drawer signed and delivered a check on July 6, 1949. The check was dated July 8, 1949. Here the instrument itself gave notice that it was postdated. The court found that “a postdated check is in the nature of a promise to discharge a present obligation at a future date. The implication is that funds are not yet available; otherwise the check would not be postdated.” (Azzarello v Richards, supra, p 724.)
In Alpha Aromatics v Frisone (50 Misc 2d 341), a check dated July 30, 1963 was delivered on July 26, 1963. The instrument gave sufficient notice of postdating to prevent the issuing corporate officer from being found guilty of fraud.
In People v Kubitz (37 Misc 2d 453), a check dated October 10, 1962 but delivered on October 9, 1962 was found to be postdated and the defendant was found not guilty of issuing a bad check.
In most of the cases cited above the requirement that the payee of the check must have at least implied notice of the fact that the check is dated later than the date of delivery is taken from the facts and not explicitly mentioned by the court. There are two New York cases in which the notice element of postdating is more clearly if briefly discussed by the court.
In Clarke Nat. Bank v Bank of Albion (supra, p 600), the court, although not speaking of a payee of a check, did say that “The plaintiff’s bank did not receive from the face of the paper, the same full and complete notice”.
In People v Kapitofsky (144 Misc 543) the defendant gave a check to the complainant’s sales representative with an agreement that the check would be held for 10 days. The check was deposited after five days and returned unpaid.
*227 The court found this agreement to hold the check for 10 days to be the equivalent of postdating the check. “[A] postdated check is in effect a promissory note, the very act of dating the check ahead being tantamount to an express declaration that it would not be paid if presented at once. Analogously, when the complainant here consented to withhold the check from deposit he signified that he knew that the defendant’s funds in the bank were less than the face amount of the check. He relied upon the defendant’s promise, express or implied, to make it good at a later date.” (People v Kapitofsky, supra, p 544.)
The cases discussed above each dealt with a postdated or similar check. In each case the person receiving the check either knew expressly or could have learned from the face of the instrument that the date of the paper was later than the date of delivery of the paper. In each case the defendant was found not guilty of issuing a bad check due to the failure to prove fraudulent intent. The State was unable to prove fraudulent intent due to the fact that in each case the person receiving the check either knew that the check was written prior to the date of the instrument or could have learned that fact from examining the face of the instrument itself. Once the person receiving the check knew or could have known that the check was drawn on a day prior to the date on the check, he knew that by accepting such a check he was taking a risk in that there currently were insufficient funds to cover the check and that there might still be insufficient funds on the future date which appeared on the check. Accepting a check with express or implied knowledge of such a risk vitiated any fraudulent intent on the part of the maker and prevented his criminal conviction, when the check was later returned unpaid.
It is now apparent that the maker of a postdated check can avoid criminal sanctions when the check is written prior to the date on the instrument and the person receiving the check had express or implied notice that the check was written prior to the date on the instrument.
In reaching such a conclusion New York aligns itself with the majority of States which require some form of notice before a check can be considered postdated. “Likewise, a postdated check, in the absence of a present repre *228 sentation that the check is good, carries on its face implied notice that the maker does not presently have sufficient funds on deposit to pay the check. However, before this notice will be implied, the payee must be made aware that the check is, in fact, postdated.” (People v Meller, 185 Col 389, 392; Matter of Griffin, 83 Cal App 779; Turner v Brenner, 138 Va 232; Highsmith v State, 38 Ga App 192; Anderson v Bryson, 94 Fla 1165; State v Carr, 160 Wash 83.)
“[T]he courts hold, with few exceptions, that unless the payee is not informed or does not know at the time that he accepts the check that it is postdated no crime is committed even if payment is refused for want of sufficient funds when the check is presented.” (Gumm v Heider, 220 Ore 5, 29; People v Burnett, 39 Cal 2d 556; State v Eikelberger, 72 Idaho 245; State v Bruce, 1 Utah 2d 136.)
“[I]n the case of a post-dated check. Such a check differs from an ordinary check in that it carries on its face implied notice that there is not sufficient money presently on deposit to meet it, and an implied promise that there will be funds on deposit the date the check becomes due.” (State v Brookshire, 329 SW2d 252, 256 [Mo]; Commonwealth v Kelinson, 199 Pa Super 135; Commonwealth v Conti, 236 Pa Super 488; People v Abbott, _Col_, 638 P2d 781; People v Niver, 7 Mich App 652; State v Stout, 8 Ariz App 545; Bivens v State, 153 Ga App 631; Lovell v Eaton, 99 Vt 255.)
“One who knowingly takes a post-dated check * * * and exchanges an article of value therefor, makes the exchange not upon his faith that the drawer has at the time sufficient funds to meet the check, but upon his willingness to risk the ability of the drawer to make a deposit and to have in bank, on or after the date mentioned in the check, sufficient funds with which to comply with his obligation.” (Neidlinger v State, 17 Ga App 811, 815; State v Patterson, 75 Mont 315; State v Ramsbottom, 89 Idaho 1; State v Creachbaum, 24 Ohio App 2d 31; People v Bercovitz, 163 Cal 636; State v White, 135 Neb 154; see, also, State v Beard, 197 Kan 275; United States v Frazier, 444 F2d 235; Seaboard Oil Co. v Cunningham, 51 F2d 321.)
*229 CONCLUSION OF LAW
We have determined that a person receiving a postdated check must have express or implied notice of the postdating before the person writing the check can avoid criminal liability in the event that the check is returned unpaid. In the case before us, the defendant gave the checks to his attorney who delivered them to the complaining witness on the date on the face of the checks. As the facts were presented, we cannot say that the complaining witness had any form of notice that the checks involved here were drawn on a date prior to the date on the face of the checks. We cannot say, as a matter of law, that these checks were postdated so as to excuse the defendant from criminal liability. We must leave it to the trier of fact to determine if these checks were in fact postdated within the meaning of the Penal Law. (Chartrand v McConnell, 279 App Div 707.)
The defendant’s motion is denied.