STATE OF NEBRASKA, APPELLEE, V. PAUL L. DOUGLAS,
APPELLANT.

388 N.W.2d 801

Filed May 30, 1986.   No. 85-245.

William E. Morrow, Jr., Thomas J. Culhane, and Tamra L. Wilson of Erickson & Sederstrom, P.C., for appellant.

Kirk E. Naylor, Jr., and Vincent Valentino, Special Prosecutors, for appellee.

BOSLAUGH. HASTINGS, SHANAHAN, and GRANT, JJ., and MORAN and HOWARD, D. JJ., and COLWELL, D.J., Retired.

PER CURIAM.

On February 9, 1984, the Special Commonwealth Committee of the Nebraska Legislature authorized the chairperson of the committee to set a date, time, and place for a committee meeting to consider the actions of Paul Douglas in relation to Commonwealth Savings Company. The committee also described the procedures to be followed at the meeting pursuant to rules of the Nebraska Unicameral. Each witness appearing before the committee was required to take an oath or affirmation to tell the truth. On February 13 Richard Kopf, special counsel for the committee, sent a letter requesting that Douglas appear and testify before the committee. On February 25 Douglas appeared before the committee, took an oath, and testified regarding his past association with Marvin E. Copple, a real estate developer.

On June 14, 1984, the grand jury returned a true bill on the indictment that charged Douglas with two counts of criminal conduct resulting from the Commonwealth investigation. Count I charged Douglas with perjury in violation of Neb. Rev. Stat. § 28-915(1) (Reissue 1985) by alleging that

> [Douglas] did, after having given his oath or affirmation in a matter where said oath or affirmation was required by

law, and before an authority having full power to administer the same, said being the Special Commonwealth Committee of the Legislature of Nebraska, depose, affirm or declare the following matters to be fact, to-wit:

That he paid income tax on all of the payments he received from Marvin E. Copple for services he performed for Marvin E. Copple.

That the payments he received from Marvin E. Copple, for the services he performed for said Marvin E. Copple, totalled Thirty-two Thousand Five Hundred Dollars ($32,500).

That his actions as Attorney General of Nebraska had not been influenced by his business or personal relationships with Marvin E. Copple.

Further, that at the time he, Paul L. Douglas, deposed, affirmed or declared said matters to be fact he knew the same to be false.

Count II charged Douglas with obstruction of justice under Neb. Rev. Stat. § 28-901(1) (Reissue 1985).

Pursuant to Neb. Rev. Stat. § 29-1808 (Reissue 1985), Douglas moved to quash the indictment, contending in part that the testimony given under oath before the Special Commonwealth Committee was not subject to prosecution under § 28-915. The district court overruled the motion and also rejected similar contentions made in both a plea in abatement and demurrer subsequently filed by Douglas.

Douglas' trial commenced on December 3, 1984. The jury eventually found Douglas guilty of perjury and not guilty of obstruction of justice. On March 8, 1985, the district court sentenced Douglas to probation for a period of 3 years and ordered him to meet certain conditions of the probation.

At the outset we choose to offer some preliminary observations. In the first place we point out that in this case it is not within the province of our review to judge the propriety of Douglas' activities as Attorney General. We make no judgment as to whether, as a lawyer, he had a moral obligation to tell the

truth apart from any statutorily prescribed standard relating to false swearing. We undertake no assessment of the responsibility for the demise of Commonwealth Savings Company. None of these issues properly belongs within the ambit of this appeal.

Rather, we are required to examine this record for error. In so doing we may not consider that at the time Douglas was the Attorney General of the state or that he was then authorized to practice law. He is entitled to due process of law as provided by our Constitution to the same extent as any other citizen of this state. Nothing more, nothing less.

Douglas asserts nine assignments of error, including the following: "The court erred in failing to quash or dismiss Count I of the indictment because it failed as a matter of law to allege facts which would constitute perjury since the statements were made in a setting where no oaths were required by law." Because we believe this contention is dispositive of the appeal, we need not and do not consider issues raised in the remaining assignments of error.

Section 28-915 provides in pertinent part as follows:

(1) A person commits perjury if, having given his oath or affirmation in any judicial proceeding or to any affidavit on undertakings, bonds, or recognizances or in any other matter where an oath or affirmation is required by law, he deposes, affirms or declares any matter to be fact, knowing the same to be false, or denies any matter to be fact, knowing the same to be true.

The parties agree that the language "in any other matter where an oath or affirmation is required by law" in § 28-915 provides the sole basis for convicting Douglas of perjury for testimony before the Special Commonwealth Committee. Douglas maintains that for an individual to be convicted of perjury under § 28-915, the individual must knowingly make a false statement under oath where a specific statute requires an oath to be administered. Although Neb. Rev. Stat. § 50-103 (Reissue 1984) provides that any member of the Legislature *"may* administer oaths in the Legislature, and while acting on a committee *may* administer oaths on the business of such committee" (emphasis supplied), no Nebraska statute requires

that an oath be administered to individuals testifying before a legislative committee. Douglas argues that, although the allegedly false statements were made under oath, such an oath was not "required by law" and Douglas cannot be convicted of perjury. The State argues that the phrase "required by law" means only that the oath must be administered by an individual or entity possessing the authority to require the oath. It is the State's position that, since § 50-103 authorizes a legislative committee to administer and, hence, require an oath, Douglas' statements made under oath before an official body possessing the authority to administer an oath fall within the scope of § 28-915. According to the State,

> the majority rule is that if a governmental body, authority or agency is vested with the statutory authority to require that testimony be adduced in its proceedings under oath, even though the exercise of that authority is not mandatory, such testimony adduced under oath may properly be the subject of a perjury prosecution.

Brief for Appellee at 13.

Neb. Rev. Stat. § 29-106 (Reissue 1985) provides:

> This code and every other law upon the subject of crime which may be enacted shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects, and no person shall be punished for an offense which is not made penal by the plain import of the words, upon pretense that he has offended against its spirit.

In *Kinnan v. State*, 86 Neb. 234, 236-37, 125 N.W. 594, 595 (1910), this court enunciated: "[I]t is now settled beyond question, that there are no common law crimes in this state . . . ."

In construing § 28-915 we are guided by the general rule found in *State v. Ewert*, 194 Neb. 203, 204, 230 N.W.2d 609, 610 (1975): "No act is criminal unless the Legislature has in express terms declared it to be so, and no person can be punished for any act or omission which is not made penal by the plain import of written law." Also, as this court held in *State v. Beyer*, 218 Neb. 33, 37, 352 N.W.2d 168, 171 (1984): " 'It is a

fundamental principle of statutory construction that a penal statute is to be strictly construed.' " In *United States v. Speidel*, 562 F.2d 1129, 1131-32 n.4 (8th Cir. 1977), the Court of Appeals for the Eighth Circuit stated: "Strict construction of criminal statutes is based on need to provide fair warning of what conduct is criminal and to insure that the legislature rather than the courts define criminal behavior." As expressed by this court in *State v. Hamilton*, 215 Neb. 694, 699, 340 N.W.2d 397, 400 (1983): "It is not for courts to supply missing words and even sentences in order to make definite that which is indefinite."

In *Saunders v. State*, 170 Tex. Crim. 358, 341 S.W.2d 173 (1960), the Texas Court of Criminal Appeals addressed the question of whether false testimony given before an investigatory committee of the Texas Legislature constituted perjury under a statute which defined perjury as a false statement made under oath or affirmation in "circumstances in which [such] oath or affirmation is required by law . . . ." 341 S.W.2d at 176 (Davidson, J., concurring). Tex. Stat. Ann. art. 5429a (Vernon 1958) authorized members of the Legislature to administer oaths, and Saunders, appearing before the legislative committee, made the allegedly false statements while under oath. In holding that Saunders' prosecution for perjury should have been dismissed, the Texas court stated:

> Nowhere in our statutes may the requirement be found which demands that witnesses who testify before the Legislature or any of its committees shall be sworn. Article 5429a, Vernon's Ann.Civ.St., merely *empowers* members of the Legislature to administer oaths to witnesses who appear before either House or a committee thereof and does no more than add members of the Legislature to those enumerated in Article 26, V.A.C.S., as those who are authorized to administer oaths.
>
> Can it be said that an oath administered by any of those persons . . . enumerated in Articles 26 or 5429a, supra, is, per se, one which is required by law? We think not.

(Emphasis in original.) 341 S.W.2d at 174. In a concurring opinion one judge of the court also noted:

> The cases which have been before this court wherein a conviction for perjury was authorized upon a false

affidavit or statement outside of and unconnected with a judicial proceeding are based upon the proposition that there must exist a valid statute, a valid law, which requires the making of the affidavit or statement under oath.

341 S.W.2d at 177 (Davidson, J., concurring). The general proposition established in *Saunders v. State, supra*, therefore, is that for an oath to be one which is "required by law," a specific statute must explicitly require that an oath be administered. That an individual or entity possesses the authority to administer an oath is not sufficient to implicate the more restrictive language "required by law."

The State declares that *Saunders v. State, supra*, is unpersuasive and refers us to *Commonwealth v. Giles*, 350 Mass. 102, 213 N.E.2d 476 (1966). In *Giles* the defendant was indicted on two counts of perjury for allegedly false statements made before the Massachusetts Crime Commission. The relevant section of the Massachusetts perjury statute provided that a false statement must be made by one "being required by law to take an oath." *Id*. at 105 n.3, 213 N.E.2d at 479 n.3. See, also, Mass. Gen. Laws Ann. ch. 268, § 1 (West 1970). The crime commission was statutorily authorized to administer an oath, but no Massachusetts statute required that an oath be administered to individuals testifying before the commission. The majority of the Supreme Judicial Court of Massachusetts, relying extensively upon a close examination of the legislative history of the Massachusetts perjury statute, concluded that the Legislature intended that "all wilfully false (and relevant) statements under oath . . . were to constitute perjury, where the oath reasonably should be regarded as 'required by law,' " that is, "where there [is] statutory or other legal justification for requiring an oath in particular circumstances." *Id*. at 107-08, 213 N.E.2d at 480-81. Thus, although no statute specifically required that an oath be administered to individuals testifying before the commission, the fact that the commission was authorized to require an oath was sufficient to satisfy the language "required by law."

However, we find the dissent in *Commonwealth v. Giles, supra*, to be more persuasive:

No standard is set by the words "other legal justification

for requiring an oath in particular circumstances" or by the words "where the oath reasonably should be regarded as 'required by law.' " These words, engrafted on the statute by the majority, not only leave their meaning and applicability to the judiciary, but they implicitly require the court, as each case arises, to supply an essential element of the crime, namely, the particular oath, whether required by statute or not, to which the penalty for false swearing attaches. Penal statutes should not be left in such a peripatetic state. From the founding of the Commonwealth public policy has been against such enactments. "The public policy of the Commonwealth in the creation of crimes is not for this court to determine, but for the Legislature. Our function is merely that of discovering the meaning of the words that the Legislature has used, bearing in mind that under the American system of law a citizen is not to be punished criminally unless his deed falls plainly within the words of the statutory prohibition, construed naturally. His deed is not to be declared a crime upon ambiguous words or by a strained construction." [Citation omitted.]

*Commonwealth v. Giles, supra* at 120-21, 213 N.E.2d at 488-89 (Kirk, J., dissenting).

The view adopted by the court in *Saunders v. State*, 170 Tex. Crim. 358, 341 S.W.2d 173 (1960), and suggested by the dissenting opinion in *Commonwealth v. Giles, supra*, is equally applicable to the case before us in the construction of § 28-915.

At common law, perjury was limited to materially false testimony given as part of a *judicial proceeding*. See 4 Wharton's Criminal Law § 601 (C. Torcia 14th ed. 1981). Thus, to the extent that false testimony given in a nonjudicial proceeding constitutes the criminal offense of perjury, it is a statutory deviation from the accepted common-law definition of perjury. Section 28-915 was enacted in 1977 as part of the overall revision of the Nebraska Criminal Code and is substantially similar to previous Neb. Rev. Stat. § 28-701 (Reissue 1975), "or in any other matter where, by law, an oath or affirmation is required," which, in turn, was based upon Gen. Stat. ch. 58, § 155 (1873).

It is of significance to us that the Model Penal Code, at the time of the enactment of § 28-915 in 1977, defined perjury as follows:

A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

Model Penal Code § 241.1(1) at 175 (1985).

"[O]fficial proceeding" means a proceeding heard or which may be heard before any legislative, judicial, administrative or other governmental agency or official authorized to take evidence under oath, including any referee, hearing examiner, commissioner, notary or other person taking testimony or deposition in connection with any such proceeding.

Model Penal Code § 240.0(4) at 167 (1985). Section 241.1(1) specifically includes within its definition of perjury sworn testimony before a legislative committee.

The proposal to effect a general revision of the Nebraska penal code originated in L.R. 39, 80th Leg., 1969 Legis. J. 1589 (Apr. 22, 1969). Pursuant to the resolution, a commission was appointed and a study made of the entire penal code. The commission's report, which was sent to the Speaker of the Legislature on October 2, 1972, recommended adoption of the Model Penal Code provisions concerning perjury. See Advisory Committee Final Draft, Proposed Revision of the Nebraska Criminal Code §§ 9-601, 9-602.

L.B. 8, the bill which was introduced in the 83d Leg., 1st Sess., on January 3, 1973, to adopt the Nebraska Criminal Code, contained the provisions of the Model Penal Code relating to perjury. See L.B. 8, §§ 192, 193 at 149-51. On March 19, 1974, L.B. 8 as amended by the Judiciary Committee was placed on General File. These amendments struck the language of the Model Penal Code concerning perjury and inserted the language concerning perjury which was eventually contained in L.B. 38 at the time it was introduced and later passed on June 1, 1977. See Judiciary Committee amendments to L.B. 8, 83d

Leg., 2d Sess. § 160 at 127.

Although several states have either adopted the Model Penal Code's conception of perjury, see, e.g., Ala. Code § 13A-10-101 (repl. 1982); N.D. Cent. Code § 12.1-11-01 (repl. 1985); 18 Pa. Cons. Stat. Ann. § 4902 (Purdon 1983), or selected the phrase "required or *authorized* by law" (emphasis supplied) in defining perjury, see, e.g., Iowa Code Ann. § 720.2 (West 1979); Minn. Stat. Ann. § 609.48 (West 1964), we find it persuasive that the Nebraska Legislature, in enacting § 28-915, chose not to adopt the Model Penal Code provision but, instead, expressly rejected the broad language of the Model Penal Code and elected to adhere to the general notion originally expressed in § 28-701, that criminal perjury is limited to situations where an oath is "required by law."

It may be argued that public policy should include within the definition of perjury false testimony made under oath before a legislative committee. It is not, however, the function of this court to determine what form a penal statute best serves the public interest, but to strictly construe and apply the penal statute chosen by the Legislature. *State v. Hamilton*, 215 Neb. 694, 340 N.W.2d 397 (1983). In a strict sense the word "require" is an imperative. To require means "[t]o direct, order, demand, instruct, command, claim, compel, request, need, exact." Black's Law Dictionary 1172 (5th ed. 1979). The word "law" means "statute." See *Matter of Sorensen*, 195 Misc. 742, 91 N.Y.S.2d 220 (1949). That other jurisdictions, following the lead of the Model Penal Code, have adopted more expansive deviations from the common-law definition of perjury only accentuates the degree to which we must carefully construe the more restrictive language chosen by the Nebraska Legislature. We simply cannot accept the State's invitation to create, in the guise of judicial construction, a new perjury statute.

Accordingly, we conclude that for an individual to be convicted of perjury under § 28-915 on the basis of the language "in any other matter where an oath or affirmation is required by law," such individual, "having given his oath or affirmation," must depose, affirm, or declare "any matter to be fact, knowing the same to be false," or deny "any matter to be fact, knowing the same to be true," in a circumstance where

a specific statute explicitly requires an oath to be administered. Since there is no Nebraska statute explicitly requiring an oath to be administered to individuals testifying before a legislative committee, Douglas' sworn testimony before the Special Commonwealth Committee could not have provided the basis for prosecution under § 28-915. The State, in an attempt to bring Douglas' testimony before the Special Commonwealth Committee within the ambit of § 28-915, cites to Neb. Rev. Stat. § 50-105 (Reissue 1984), which authorizes the Legislature to punish as contempt "refusing to attend or to be sworn or to be examined as a witness before the Legislature or a committee . . . ." Although such section does authorize the Legislature to hold in contempt an individual refusing to be sworn, when required by a committee of the Legislature pursuant to a rule of the Nebraska Unicameral, the statute does not explicitly require that an oath be administered to individuals testifying before a committee, as do other statutes governing testimony before various administrative boards and quasi-judicial entities. See, e.g., Neb. Rev. Stat. § 23-1807 (Reissue 1983), coroner's inquest: "[a]n oath shall be administered to the witnesses"; Neb. Rev. Stat. § 81-885.18(5) (Reissue 1981), real estate license application hearings: "all witnesses shall be duly sworn by the chairman of the commission."

The indictment did not and could not state an offense under § 28-915. Douglas' motion to quash should have been granted and the prosecution dismissed.

Therefore, we reverse the judgment and remand this matter to the district court with direction to quash the indictment and dismiss the proceedings.

REVERSED AND REMANDED WITH
DIRECTION TO DISMISS.