STATE OF NEBRASKA, APPELLEE, V. JAN F. PAPILLON, APPELLANT.

389 N.W.2d 553

Filed June 27, 1986.   No. 85-490.

Jan F. Papillon, pro se.

Herbert M. Fitle, Omaha City Attorney, and Gary P. Bucchino, Omaha City Prosecutor, Richard M. Jones, and David F. Smalheiser, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Jan F. Papillon appeals from a judgment initially entered by the former municipal court of the city of Omaha finding

Papillon guilty of the crime of writing a bad check in violation of Neb. Rev. Stat. § 28-611(3) (Reissue 1985). This is a Class II misdemeanor, punishable by up to 6 months' imprisonment, a $1,000 fine, or both. Following the trial, at which he was found guilty, Papillon was sentenced to pay a fine of $150 and costs. He thereafter appealed his conviction to the district court for Douglas County, Nebraska, where the conviction was affirmed. It is from this judgment that he now appeals to this court. We have reviewed the record and determined, as a matter of law, that Papillon is not guilty of the crime charged and that the judgment must therefore be reversed and the complaint dismissed.

While the evidence is in dispute in certain details, most of the relevant evidence is without dispute. The evidence discloses that during April of 1984 Papillon was employed by General Bank Equipment (GBE) to develop and implement a marketing program. Shortly after the employment began, a dispute arose between GBE and Papillon with regard to how the program was going and what services were to be provided. In any event, in an apparent effort to resolve that dispute, Papillon wrote a check to GBE for $1,500. The check was marked "FOR Services Rendered (4-20-84)." According to an officer of GBE, those services rendered by GBE were "[providing] a means for [Papillon] to perform a marketing study for another organization that he was a member of." The representative of GBE testified that at this time GBE could not afford Papillon's services any longer, but Papillon wanted to finish his study. They agreed on a figure of $1,500 for Papillon to stay on and try to finish the study. The check given by Papillon to GBE was postdated to July 4, 1984. At the time the check was written, Papillon advised GBE that there were not sufficient funds available and that that was the reason he requested that the check be postdated to July 4, 1984. There is some dispute as to the reason given for the lack of funds, but the reason does not appear to be relevant for our purposes. What is significant is that the check was intentionally postdated, and GBE was made aware of that fact. Just prior to July 4, 1984, Papillon closed his account, and when GBE then negotiated the check on July 4, 1984, it was returned "account closed." GBE notified Papillon

of this event, but no effort was made by Papillon to place sufficient funds in the account in order to permit the check to clear.

Papillon has raised several alleged errors. We believe, however, that we need only address the question of whether the giving of a postdated check, where both the maker and the payee are aware that the check is postdated, can ever constitute a violation of § 28-611(3). We believe it cannot.

Section 28-611(3) provides as follows:

> Whoever otherwise issues or passes a check or similar signed order for the payment of money, knowing that he or she has no account with the drawee at the time the check or order is issued, or, if he or she has such an account, knowing that he or she does not have sufficient funds in, or credit with, the drawee for the payment.of such check or order in full upon its presentation, commits a Class II misdemeanor.

While there appears to be a split of authority in the United States regarding whether a postdated check can constitute a ·violation of a statute such as § 28-611(3), the majority and better reasoned cases appear to take the position that a postdated check cannot constitute a violation of a statute which requires an intent to defraud at the time the check is issued. See cases collected at Annot., 95 A.L.R. 486, 496 (1935), and Annot., 29 A.L.R.2d 1181 (1953). In the case of *Commonwealth v. Kelinson*, 199 Pa. Super. 135, 139-40, 184 A.2d 374, 376-77 (1962), the Pennsylvania court, in interpreting a statute similar to § 28-611(3), said:

> [T]he elements of the offense must be.established by the evidence and one of the essential elements is knowing at the time of the making that there is insufficient funds to cover it. This is impossible when the check on its face made it due in the future and the payee in accepting it is looking to the promise of payment in the future and is not then defrauded. It.is elementary that the act ·must be strictly construed.
>
> . . . .
>
> A post-dated check is one that is made and delivered at sometime prior to the day of its date. It is generally held to

be payable at sight or upon presentation at the bank at any time on or after the day of its date. It differs from an ordinary check in that it has on its face implied notice that there is no money presently on deposit available to meet it, with the implied assurance that there will be such funds on the day it becomes due. It is a familiar and useful form of negotiable paper and plays an important part in the role of commerce. Ordinarily its purpose is to obtain an extension of credit. The maker knows when he issues a post-dated check that there are no funds on deposit available to meet it.

Similarly, in the case of *State v. Brookshire*, 329 S.W.2d 252, 255-57 (Mo. App. 1959), the Missouri court, in passing upon a similar statute, said:

The gist of the offense denounced by the statute (Sec. 561.460) is the fraudulent intent with which a check, draft or order is drawn and delivered, and knowledge by the drawer at the time of said drawing and delivering that he has not sufficient funds in or credit with the bank to meet such check, draft or order in full upon its presentation. Intent to defraud is an essential element of the crime denounced by the statute. . . .

. . . .

Ordinarily, where a check is drawn on a bank in which the drawer does not have on deposit sufficient funds from which the check can be paid, the mere fact of making the check with knowledge of the insufficiency of the account would be sufficient evidence of fraudulent intent to send the case to the jury. But this is not so in the case of a post-dated check. Such a check differs from an ordinary check in that it carries on its face implied notice that there is not sufficient money presently on deposit to meet it, and an implied promise that there will be funds on deposit the date the check becomes due. The fraudulent intent required to be shown in such a case is with reference to the promise or assurance of future action . . . and not with reference to the failure to keep the promise. Otherwise, the law would be punishing one for a failure to pay a debt. But such intent cannot be inferred from the mere issuance of

the check, or from the other facts in this case relied upon by the State as sufficient to send the issue to the jury. These circumstances, while they may create a suspicion of guilt, are yet wholly insufficient to prove a fraudulent intent. They are consistent with the fact of innocence.

As conceded by the State, the gravamen of the offense is the delivering of a check to a payee who is led to believe that he or she has thereby received payment, when the maker intends to defraud the payee by delivering a check that on its face appears to constitute payment when in fact it does not. On the other hand, it appears to us that the evidence in this case, as generally in cases involving postdated checks, establishes that at the time the check was issued, the payee was put on notice that the check could not be presented for payment. In the instant case the maker specifically advised the payee that the check could not be immediately presented for payment and could not be presented for more than 2 months after the date of its issuance. The check, in reality, was nothing more than a promissory note. See Neb. U.C.C. art. 3 (Reissue 1980). That is not to say that the maker may not be guilty of some other crime or is not liable for payment on the check. It is merely that the elements of the crime as prescribed by the Legislature do not cover postdated checks.

As we recently noted in *State v. Douglas*, 222 Neb. 833, 837-38, 388 N.W.2d 801, 804 (1986):

"[I]t is now settled beyond question, that there are no common law crimes in this state . . . ."

. . . "No act is criminal unless the Legislature has in express terms declared it to be so, and no person can be punished for any act or omission which is not made penal by the plain import of written law." . . . " 'It is a fundamental principle of statutory construction that a penal statute is to be strictly construed.' "

We, therefore, hold that where the maker of a postdated check informs the payee at the time of its delivery that he or she has no funds in the bank to pay the check if presented immediately after issuance, the maker cannot be guilty of violating § 28-611(3).

In the instant case the evidence is without contradiction that, at the time the check was issued, the payee was fully advised and

fully aware of the fact that there were not then sufficient funds in the maker's account to permit the check to be paid upon immediate presentation. It is for that reason that the payee accepted a postdated check. The evidence, therefore, fails to establish a present intent to defraud.

At oral argument the State conceded that in order for the State to convict one of violating this section, the State must prove that the check was issued with the intent to defraud. See *State v. Wiley*, 219 Neb. 740, 365 N.W.2d 844 (1985). Moreover, the State conceded that the intent to defraud must occur at the time that the check is drawn. The State argues, however, that the statute creates a presumption of an intent if, after being notified, the maker fails to take action to place sufficient funds in the account in order to permit the check to clear. This is as provided for by § 28-611(5). However, a reading of § 28-611(5) makes it clear that the section cannot have application to a postdated check. Section 28-611(5) provides as follows:

> In any prosecution where the person issuing the check has an account with the drawee, he or she shall be presumed to have known that he or she did not have sufficient funds in, or credit with, the drawee for the payment of such check or order in full upon its presentation, if, within thirty days *after issuance* of the check or order, he or she has been notified that the drawee refused payment for lack of funds and he or she has failed within ten days after such notice to make the check good . . . .

(Emphasis supplied.)

In order for § 28-611(5) to apply, the notice must be given within 30 days after the check is issued. In the case of a postdated check, however, presentment for payment may, as in the present case, be deferred for more than 30 days. Section 28-611(5) clearly contemplates that the check given must be eligible for presentment for payment at once and, therefore, does not appear to consider the effect of a postdated check wherein both the maker and the payee are put on notice that the check may not be eligible for presentment for payment until more than 30 days after the check has been issued.

The State cites to us the case of *White v. State*, 135 Neb. 154, 280 N.W. 433 (1938), which seems to be contrary to our decision

herein. While the statute in *White* is a different statute than § 28-611(3), nevertheless, to the extent that *White v. State, supra,* may be presently read to mean that § 28-611(3) applies to a postdated check, it is specifically overruled.

The judgment, therefore, of the district court affirming the conviction entered by the former municipal court of the city of Omaha is hereby reversed and the cause remanded with directions to remand the action to the current county court for Douglas County, Nebraska, with instructions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., participating on briefs.