STATE of Iowa, Appellee,

v.

John Anthony McFADDEN, Appellant.

No. 89–1179.

Supreme Court of Iowa.

March 20, 1991.

Linda Del Gallo, State Appellate Defender and Andi S. Lipman, Asst. Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., Mary E. Richards, County Atty., and Dennis W. Parmenter, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN and SNELL, JJ.

McGIVERIN, Chief Justice.

Defendant John Anthony McFadden was found guilty, following a jury trial, of third-degree theft in violation of Iowa Code sections 714.1(6) and 714.2(3) (1989). Defendant appeals, raising several contentions. The main issue involves whether criminal liability may result from the delivery of a postdated check.

We transferred the case to our court of appeals. That court affirmed.

We granted defendant's application for further review. We, now, affirm the deci-

sion of the court of appeals and the district court judgment.

I. *Background facts and proceedings.* The record would allow the jury to find the following facts. On March 30, 1989, defendant phoned the Ames branch of Midland Financial Services (Midland) and asked Midland's employee Jeanne Vosika if he could get a cash advance on his parent's credit card. Defendant told Vosika that he did not have the credit card in his possession but that he knew the name of the card, the numbers on the card and the expiration date of the card. Vosika informed defendant that the credit card information, without the actual card, was insufficient to obtain a cash advance.

Defendant then asked whether Midland would cash a check drawn on another bank. Vosika replied that Midland would cash defendant's check drawn on another bank if he had an account at Midland.

Shortly thereafter, defendant arrived at Midland and presented Vosika with a $395 check drawn on the Ames branch of United Bank and Trust (United Bank). Defendant had written his Midland savings account number on the check. Defendant also crossed out the telephone number printed on the check and wrote in a different number. Also significant was the fact that the check was postdated to March 31. At the time of the transaction, however, Vosika did not notice that the check was postdated. Further, Vosika testified at trial that defendant did not tell her that he postdated the check. Vosika gave defendant $395 cash in exchange for the check.

After defendant left the bank, Vosika examined defendant's Midland savings account and discovered that it contained a $3 balance. Vosika called United Bank to verify that defendant had sufficient funds in his checking account to cover the check. She was told that defendant's account had been closed in November 1988 due to overdrafts.

Upon learning that defendant no longer maintained a checking account at United Bank, Vosika attempted to call defendant at the telephone number written on the check. That number was disconnected.

Vosika also called the telephone number printed on the check and the telephone number defendant gave Midland when he opened his savings account. The persons answering those telephone calls did not know defendant. Vosika consulted with her supervisor who immediately presented the check to United Bank, and, after United Bank refused to honor the check, notified the police. Shortly thereafter, defendant was arrested. Defendant has never reopened his United Bank account nor reimbursed Midland.

Defendant was charged by trial information with one count of third-degree theft. *See* Iowa Code §§ 714.1(6), 714.2(3). Specifically, the trial information stated that defendant "did unlawfully make, utter, draw, deliver, or give checks and obtain property or service in exchange therefor while knowing the checks would not be paid when presented...." The case proceeded to a jury trial.

At the close of the state's evidence, defendant moved for judgment of acquittal, *see* Iowa R.Crim.P. 18(8), arguing that, as a matter of law, prosecution of a postdated check was not authorized under Iowa Code section 714.1(6). The court overruled defendant's motion. Defendant renewed his motion for judgment of acquittal at the close of all evidence and additionally argued that the state had failed to prove the charges against him beyond a reasonable doubt. The court again denied defendant's motion.

Defendant proposed two jury instructions concerning the effect of postdating a check. The court refused to give defendant's requested instructions, finding that the proposed instructions regarded questions of law which the court had previously decided.

The jury found defendant guilty of third-degree theft. Defendant filed motions in arrest of judgment and for a new trial, which were denied by the court. Judgment and sentence were entered against defendant. Defendant appealed.

We transferred the case to our court of appeals. The court of appeals concluded

that the district court properly disposed of all issues raised on appeal.

Defendant applied for further review. We granted defendant's application and now consider whether the trial court erred in: (1) ruling that a postdated check qualifies as a check under the theft statute, (2) ruling that criminal liability may be based on a postdated check, (3) overruling defendant's motion for judgment of acquittal because the evidence was not sufficient to support a conviction, and (4) failing to give defendant's requested jury instructions.

Additional facts will be stated as the issues are considered.

II. *Defining "check."* Defendant contends that, as a matter of law, a postdated check does not qualify as a "check" under Iowa Code section 714.1(6).

Section 714.1 provides, in part:

A person commits theft when the person does any of the following:

. . . .

6. Makes, utters, draws, delivers, or gives any check ... on any bank ... and obtains property or service in exchange therefor, if the person knows that such check ... will not be paid when presented.

■ Defendant asserts that, applying relevant definitions found in Article 3 of the Uniform Commercial Code (codified in Iowa Code chapter 554) to define the terms of section 714.1(6), we must rule as a matter of law that postdated checks cannot support a conviction under section 714.1(6). Defendant's theory is that postdated checks are not included within the definition of checks as that word is defined by Article 3 of the Uniform Commercial Code.

Initially, we note that definitions found in Article 3 of the Uniform Commercial Code do not control the meaning of words used in chapter 714. *See, e.g.,* Iowa Code § 554.3104(1) & (2) (definitions apply only to Article 3 of the Uniform Commercial Code). The definitions are, however, helpful in determining the meaning of words used in chapter 714.

Article 3 of the Uniform Commercial Code defines check as a draft drawn on a bank and payable on demand. Iowa Code § 554.3104(2)(b). Defendant contends that his postdated check does not meet the requirements of this definition because it was not payable on demand.

Article 3 of the Uniform Commercial Code specifically addresses the effect of postdating checks. It states, in part, "1. The negotiability of an instrument is not affected by the fact that it is ... postdated. 2. Where an instrument is ... postdated the time when it is payable is determined by the stated date if the instrument is payable on demand." Iowa Code § 554.3114. This section provides two rationales concerning why postdating a check does not, by itself, remove an instrument from being classified as a check.

First, section 554.3114(1) explicitly states that a check's negotiability is not affected by the fact that it is postdated. This supports the position that a check's character is not affected by postdating. Further, section 554.3114(2) clearly contemplates that postdating a check does not remove that instrument from being payable on demand. The language of section 554.3114(2) establishes that a check can be both postdated and payable on demand; thus, refuting defendant's argument that a postdated check cannot qualify as a check because it is not payable on demand. Applying these definitions, postdating does not prevent an instrument from falling within the definition of check as the word is used in section 714.1(6).

III. *Criminal liability for postdated checks.* Defendant argues that even if we find that the instrument he delivered to Midland was a check as required by section 714.1(6), there still would be no criminal liability, citing *State v. Doudna,* 226 Iowa 351, 284 N.W. 113 (1939). Defendant's position is that *Doudna* establishes that criminal liability does not result from the delivery of a postdated check because postdating eliminates the fraudulent intent necessary to the criminal charge. We disagree with his interpretation of *Doudna.*

In *Doudna,* the defendant delivered a check dated November 28 on November 27. *Id.* at 353, 284 N.W. at 114. At the time

the check was issued, and at all times thereafter, there was not sufficient funds in Doudna's account to cover the check. *Id.* In upholding Doudna's conviction for falsely uttering a postdated check, we held that the fact that the check was postdated was not a bar to prosecution. *Id.* at 357–59, 284 N.W. at 116–17. We stated that:

> The doctrine that criminal liability may not be predicated upon a postdated check is not based upon the fact that a check bears a date later than the date of its delivery. The reason for such holding is that the representations made refer to a time subsequent to delivery.
>
> . . . .
>
> The check in this case was given by appellant on November 27, after the bank had closed for the day. There was no representation that the check was not then cashable. On the contrary the giving of the check and the statements made at the time, in connection with the surrounding circumstances, were representations as to an existing condition, the same as though it had been given at 6 a.m., on November 28.

*Id.* at 357–58, 284 N.W. at 116.

Our more recent holding in *State v. James*, 310 N.W.2d 197 (Iowa 1981), confirms the approach taken in *Doudna*. In *James*, we stated that, "the gist of the offense under section 714.1(6) is obtaining something of value through deception." *Id.* at 200–01. Thus, we said that a person cannot be convicted under section 714.1(6) if the alleged victim knew the check was worthless when presented. *Id.* at 201. We noted that in that event the victim had not been deceived. *Id.*

■ Our holdings establish that when there is an understanding between the parties that a check is not cashable[1] at the time it is received, but will be made so at some time in the future, the representations made are only promises, there is no deception and, thus, no criminal liability results under section 714.1(6). If, however, the surrounding circumstances at the time

a check is given, including the statements made, are representations that sufficient funds exist at that time to cover the check, then criminal liability may result even though a check is postdated. Our focus remains on the representations made at the time a check is delivered. *State v. Cooper*, 169 Iowa 571, 576, 151 N.W. 835, 838 (1915) (affirming conviction for making and passing a postdated check).

■ Under our approach, a postdate is only *evidence* that a check was intended as a promise of future payment and does not alone relieve a defendant of criminal responsibility. It must also be established that both parties understood that a check was not cashable when delivered before criminal liability is precluded as a matter of law. Where both parties do not understand that a postdated check is not cashable until a future date, the question of guilt should be submitted to the fact finder. It is then up to the fact finder to determine whether the maker deceived the party receiving the check by presenting a check that the maker knew, at the time of delivery, would not be paid when presented to the bank it was drawn upon.

Other jurisdictions faced with deciding whether the fact that a check is postdated should, under all circumstances, be an absolute defense to a criminal charge have reached a similar result. *See, e.g., State v. Ramsbottom*, 89 Idaho 1, 7, 402 P.2d 384, 387 (1965) (a crime is committed when a person knowingly and intentionally issues a postdated check without calling to the attention of the payee that it is postdated); *Mercer v. Commonwealth*, 332 S.W.2d 655, 655–56 (Ky.1960) (fact that a check is postdated does not by itself relieve the maker of criminal liability for uttering a worthless check; testimony of person accepting the check that he believed the check was good is sufficient to create a jury question); *People v. Gerber*, 115 Misc.2d 222, 229, 453 N.Y.S.2d 998, 1002–03 (N.Y.Crim.Ct.1982) (person receiving a postdated check must have notice of the postdating before the

---

1. We use the words "not cashable" in the sense that the check is not then payable from funds on deposit.

person writing the check can avoid criminal liability); *State v. Bruce*, 1 Utah 2d 136, 139–40 262 P.2d 960, 962–63 (1953).

Defendant cites *State v. Papillon*, 223 Neb. 325, 389 N.W.2d 553 (1986), in support of his position that criminal liability can never result from a postdated check. We, however, believe that *Papillon* does not stand for that proposition. In *Papillon*, the Nebraska supreme court held that, "where the maker of a postdated check informs the payee at the time of its delivery that he or she has no funds in the bank to pay the check if presented immediately after issuance, the maker cannot be guilty of [a crime]." *Id.* at 329, 389 N.W.2d at 556. The Nebraska supreme court did not hold that the postdating of a check is an absolute defense to criminal liability; it did not determine the result when the maker represents that the check is then good and the payee is not aware that a check is postdated. That is the situation we have in this case.

In reaching the conclusion that postdating a check should not be an absolute defense, the Utah supreme court suggested the following hypothetical:

[A]ssume a maker postdated a check when he had no account whatsoever and never had any intention of having one. To eliminate the possibility of argument or doubt, suppose further that in the presence of witnesses he had so declared and that he had a scheme to defraud the payee by the use of a postdated check because he knew that he would thus be immune from criminal prosecution; add to this the fact that he used active concealment, trickery or falsehood in leading the payee to believe the check was not postdated and that the circumstances were such that the payee, acting with due care, relied thereon and accepted the check as one of the current date. Surely it would not then be contended that the maker should be rewarded for his chicanery and held immune from prosecution because he included the postdating of a check as part of his scheme to defraud.

*Bruce*, 1 Utah 2d at 139–40, 262 P.2d at 963. Thus, that court determined that if,

"the payee acting reasonably accepts the check as one of the current date, ... the question of guilt should be submitted to the jury." *Id.* at 140, 262 P.2d at 963. We agree with the statements of the Utah supreme court.

In this case there was evidence that Vosika, the Midland teller, was not aware that defendant's check was postdated. Further, Vosika testified that she would not have accepted defendant's check if she had known that the check was not then good. This testimony provided evidence that the parties had no understanding that defendant's check would not be collectible until a later date. Therefore, because both parties did not understand that the check was not immediately cashable, defendant was not entitled to a judgment of acquittal as a matter of law. The district court properly submitted the question of guilt to the jury.

■ IV. *Sufficiency of the evidence.* Defendant contends there was not sufficient evidence to support his conviction for third-degree theft under sections 714.1(6) and 714.2(3).

The instructions given at trial required the state to prove beyond a reasonable doubt each of the following elements:

1. That on or about March 30, 1989, the defendant did make, utter, draw, deliver or give to Midland Financial a check in the amount of $395.

2. That the check was drawn on United Bank and Trust.

3. That upon delivery of the check the defendant received $395 cash.

4. That the defendant knew at the time he presented the check to Midland Financial it would not be paid when presented for payment to United Bank and Trust.

Defendant's specific contention is there was not sufficient evidence to support a finding that he knew the check he cashed at Midland would not be paid when presented. We disagree. In addition to other evidence we have set forth, the following testimony was introduced at trial to establish that defendant knew the check would not be paid when presented: Defendant's own testimony stating he had received no-

tice via certified mail that his checking account at United Bank had been closed due to overdrafts more than 4 months prior to his delivering the check to Midland on March 30, and, that he owed United Bank more than $800 in connection with those overdrafts; and defendant never informed the teller that the check was postdated and was not then cashable. Finally, the fact that defendant cashed a check drawn on his closed United Bank account at Midland when there was a United Bank within close walking distance provides further evidence that defendant knew the check would not be honored by United Bank when presented.

We have reviewed the record in this case and agree with the district court and the court of appeals that there is substantial evidence such that a rational trier of fact could have found defendant guilty beyond a reasonable doubt of every element of third-degree theft.

V. *Jury instructions.* Defendant next contends the trial court erred in failing to give certain requested jury instructions.

The court of appeals found no error in the trial court's rulings on these issues and we agree.

We affirm the decision of the court of appeals and judgment of the district court.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.